United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 23, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 05-20539**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**WADE HAMPTON BIGELOW,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court
for the Southern District of Texas
(4:04-CR-117-ALL)**

---

Before DAVIS, BARKSDALE, and DEMOSS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Wade Hampton Bigelow does *not* challenge his conviction in the United States District Court for the Southern District of Texas. At issue is only whether the following special conditions for his supervised release in the written judgment conflict with the oral pronouncements at his sentencing: (1) participating in drug-treatment and mental-health programs; and (2) receiving approval from a probation officer before obtaining any form of identification. **CONVICTION AFFIRMED; SENTENCE VACATED IN PART; REMANDED.**

I.

In February 2005, Bigelow pleaded guilty to knowingly making a false statement in an application for a passport by using a false name, and falsely representing a Social Security number to be his own with the intent to deceive the State Department in order to receive a passport. Pursuant to a May 2005 sentencing hearing, he was sentenced, *inter alia*, to 15 months imprisonment and 36 months supervised release.

In addition to the standard conditions of supervised release, the June 2005 written judgment imposed the following special conditions:

> The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.
>
> The defendant shall participate in a program, inpatient or outpatient, for the treatment of drug and/or alcohol addiction, dependency or abuse which may include, but not be limited to urine, breath, saliva and skin testing to determine whether the defendant has reverted to the use of drugs and/or alcohol. Further, the defendant shall participate as instructed and as deemed necessary by the probation officer and shall comply with all rules and regulations of the treatment agency until discharged by the Program Director with the approval of the probation officer. The defendant shall further submit to drug-detection techniques, in addition to those performed by the treatment agency, as directed by the probation officer. The defendant will incur costs associated with such drug/alcohol

2

> detection and treatment, based on ability to pay as determined by the probation officer.
>
> The defendant shall not obtain any form of identification without the *prior approval* of the United States Probation Officer.

(Emphasis added.)

At Bigelow's earlier sentencing hearing, however, the only special condition of supervised release imposed orally by the district court was Bigelow's being required to "*tell* the probation officer of every bank account, credit card account, every driver's license, every certificate of any kind that you apply for or get. . . [b]ecause you might lapse back into the same thing. *Plus all the other terms and conditions*".  (Emphasis added.)

## II.

"[A] defendant has a constitutional right to be present at sentencing".  **United States v. Vega**, 332 F.3d 849, 852 (5th Cir. 2003); *see* FED. R. CRIM. P. 43(a)(3) (requiring "the defendant ... be present at ... sentencing").  "Th[is] constitutional right ... is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but ... is [also] protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him".  **United States v. Gagnon**, 470 U.S. 522, 526 (1985) (internal citation omitted).

Therefore, if the written judgment *conflicts* with the sentence pronounced at sentencing, that pronouncement controls.  **United**

3

*States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001). If, however, the difference between the two is only an ambiguity, we look to the sentencing court's intent to determine the sentence. *United States v. Warden*, 291 F.3d 363, 365 (5th Cir.), *cert. denied*, 537 U.S. 935 (2002).

This issue is being raised for the first time on appeal, for the simple reason that Bigelow had no opportunity at sentencing to consider, comment on, or object to the special conditions later included in the written judgment. Accordingly, instead of reviewing for plain error, we "review the ... court's imposition of [those] conditions for an abuse of discretion". *Id*. at 365 n.1; *see also United States v. Torres-Aguilar*, 352 F.3d 934, 935 (5th Cir. 2003).

### A.

Concerning the district court's failure to state at sentencing that Bigelow was required to participate in drug-treatment and mental-health programs, Bigelow relies primarily on our decision in *Martinez*, 250 F.3d at 942. It required the district court to eliminate participation in a drug-treatment program as a supervised-release condition because it had not been stated during the oral sentencing. *Id*. He also notes drug-treatment and mental-health programs are listed as "special" conditions under Sentencing Guideline § 5D1.3(d).

4

Bigelow's claim is consistent with the following language from ***Torres-Aguilar***: because the court "fail[ed] to mention a *special* condition at sentencing, its subsequent inclusion in the written judgment creates a conflict that requires amendment of the written judgment to conform with the oral pronouncement". 352 F.3d at 936 (internal quotation omitted; emphasis in original) (noting, however, "that explicit reference to each and every *standard* condition of supervision is *not* essential to the defendant's right to be present at sentencing" (internal quotation omitted; emphasis added)). Relying on ***Torres-Aguilar***'s holding, the Government counters that, where clearly warranted, a § 5D1.3(d) "special condition" is as standard as those in § 5D1.3(c) (standard conditions of supervised release). ***Id***. at 938.

In ***Torres-Aguilar***, it was undisputed that defendant had pleaded guilty to the felony of illegally reentering the United States after having been previously deported. ***Id***. at 937. Accordingly, although *not* pronounced at sentencing, the written judgment imposed the special condition recommended by § 5D1.3(d)(1): "If the instant conviction is for a felony ... [impose] a condition prohibiting the defendant from possessing a firearm or other dangerous weapon". U.S.S.G. § 5D1.3(d)(1). Our court held: "[B]ecause the Sentencing Guidelines recommend that *all defendants who have been convicted of a felony* be prohibited from possessing any 'dangerous weapon' during the term of

supervised release, ... this condition ... was *standard* and did not conflict with the district court's oral pronouncement of sentence". ***Torres-Aguilar***, 352 F.3d at 938 (emphasis added).

Furthermore, our court noted its holding was reinforced by the Southern District of Texas' adoption of written-judgment form AO 245B, which contains the mandatory and standard conditions of supervised release for that district:  "*Importantly*, the district court used form AO 245B in the instant case, and the prohibition against [defendant's] possession of 'a dangerous weapon' is one of the conditions *appearing on the form*".  ***Id***. at 938 n.3 (emphasis added).

Bigelow was convicted in the Southern District of Texas and the same judgment form was used.  In ***Torres-Aguilar***, however, the basis for imposing a prohibition against possessing a dangerous weapon was undisputed and based on objective facts easily determined from the record — whether defendant had previously been convicted of a felony.  ***Id***. at 937.  Here, the facts supporting imposition of the drug-treatment and mental-health programs are much more subjective (i.e, "[i]f the court has reason to believe that [Bigelow] is an abuser of narcotics" or "is in need of psychological or psychiatric treatment").  U.S.S.G. § 5D1.3(d)(4),(5).

Although the record contains evidence that Bigelow had abused drugs in the past, he stated at his rearraignment in February 2005

6

that he had not used them in "[s]everal years". Also at rearraignment, his attorney noted: although Bigelow had "a long history of psychological problems", including depression and possible personality disorders, he was not then suffering such conditions. Along that line, Bigelow acknowledged at sentencing he had medical problems and was not being medicated properly *at the time he committed the crime* for which he was being sentenced. Thus, unlike in **Torres-Aguilar**, factors supporting imposition of the special conditions for drug-treatment and mental-health programs were *not* so clear as to transform these special, into standard, conditions.

In this regard, although Bigelow participated at his sentencing, he was unable to effectuate his constitutional right to be *effectively present* because he did not receive sufficient notice that these two special conditions would be imposed in the written judgment. As noted, by not knowing at sentencing these special conditions would be imposed later in the written judgment, Bigelow was unable to object or provide evidence why those conditions were not warranted. *See* **Gagnon**, 470 U.S. at 526 (stating "a defendant has a due process right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge" (internal citation omitted)).

7

Furthermore, as discussed, Bigelow was sentenced in the Southern District of Texas, which uses judgment form AO 245B. Unlike the prohibition against possessing a dangerous weapon imposed in *Torres-Aguilar*, neither the drug-treatment nor mental-health programs are included as either mandatory or standard conditions on that form judgment. Instead, they were added to the form under the heading "SPECIAL CONDITIONS OF SUPERVISION".

Here, the Government, for the first time on appeal, relied at oral argument on the district court's above-quoted, vague, concluding comment in pronouncing sentence: "Plus all the other terms and conditions". The Government asserted the court was referring to a Southern District of Texas general order, which lists drug-treatment and mental-health programs as "special conditions applied to the supervised person by the judge at the time of sentencing". General Order No. H-1996-10.

Of course, we have no way of knowing what "other terms and conditions" the court was referring to, whether to the judgment form AO 245B or the general order. For this reason, among others, we generally do not consider assertions made for the first time at oral argument. *See* *United States v. Ogle*, 328 F.3d 182, 191 n.9 (5th Cir. 2003) ("We will generally not consider points raised for the first time at oral argument."). Obviously, this is especially true for undeveloped factual claims of this type. We cannot consider this belated, speculative assertion.

8

Moreover, our decision in **Martinez** remains binding: "The district court's failure to mention mandatory drug treatment in its oral pronouncement *constitutes a conflict, not an ambiguity*". 250 F.3d at 942 (emphasis added). That conviction was also in the Southern District of Texas. (In so holding, **Martinez** does not appear to have had at issue the above-referenced general order's listing the drug-treatment program as a special condition, even though that order was adopted in 1996, well before Martinez' sentencing in 2000.)

Accordingly, for these two special conditions, the oral pronouncement, not the written judgment, controls. *Id*. Therefore, the judgment must be conformed to that pronouncement by deleting the drug-treatment and mental-health programs as special conditions.

### B.

Bigelow also contends the written judgment's requiring him to receive approval from his probation officer *before* obtaining any identification document conflicts with the pronouncement at sentencing. As noted, the judgment imposed the following supervised-release special condition: "The defendant shall not obtain any form of identification without the *prior approval* of the United States Probation Officer". (Emphasis added.) At the earlier sentencing, however, the court instead ordered Bigelow to "*tell* the probation officer of every bank account, credit card account, every

9

driver's license, every certificate of any kind *that you apply for or get* ... [b]ecause you might lapse into the same thing". (Emphasis added.)

Similarly, in **United States v. Thomas**, 299 F.3d 150, 154-55 (2d Cir. 2002), the written judgment prohibited the defendant from possessing any identification in the name of another or assuming the identity of another person. **Id**. at 152. This condition was *not* pronounced, however, at sentencing. The Second Circuit held the written condition was not a basic requirement for the defendant's release because, *inter alia*, it encompassed non-criminal behavior (i.e., carrying a family member's identification — even with permission), and was not necessary to clarify or carry out the mandatory or standard conditions of the defendant's sentence. **Id**. at 155. Accordingly, the court remanded with instructions "to conform the written judgment to the oral sentence by striking the offensive condition of release". **Id**. at 156.

Here, the written judgment conflicts with the oral pronouncement by imposing a more burdensome requirement of prior approval, rather than merely notifying the probation officer when applying for, *or having obtained*, a new identification document. *See* **United States v. Rosario**, 386 F.3d 166, 168 (2d Cir. 2004) ("It is well settled ... [that] any burdensome punishments or restrictions added in the written judgment must be removed".) (citing **Bartone v. United States**, 375 U.S. 52, 53 (1963) (rejecting

10

additional day added to one-year sentence)).  This heightened burden is well illustrated by the following example offered by Bigelow:

> [U]nder the oral sentence, ... Bigelow could receive a picture identification for his place of employment and then inform the probation officer of its issuance.  Under the written judgment, however, ... Bigelow will be required to refuse a possible employer's order to present himself for purposes of making a picture identification document until he can obtain his probation officer's approval.

Thus, contrary to the Government's contention, the difference between the two does *not* result in a mere ambiguity.  As Bigelow notes, the prior-approval requirement can hinder or postpone his ability to engage in completely legal activity, such as obtaining an employment identification card, or even a membership card allowing him to receive purchase discounts.  The notification requirement in the oral pronouncement achieves the same end of ensuring he does not attempt to obtain identification in another name, and does so in a less-burdensome manner than the subsequent prior-approval requirement in the written judgment.  Because the judgment's requiring prior approval conflicts with the oral sentence, the former must be conformed to the latter.  *See **United States v. Wheeler***, 322 F.3d 823, 828 (5th Cir. 2003).

## III.

 For the foregoing reasons, Bigelow's conviction is **AFFIRMED**; his sentence is **VACATED in PART**; and this matter is **REMANDED** to

11

district court with instructions to conform the written judgment to the oral pronouncement at sentencing, consistent with this opinion.

**CONVICTION AFFIRMED; SENTENCE VACATED IN PART; REMANDED**