# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40033

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff–Appellee,

v.

JONATHAN RIVAS-ESTRADA,

> Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

America is captivated by sensational criminal trials. There's a Trial of the Century virtually every decade. When the O.J. Simpson verdict was announced nearly a quarter-century ago, the entire Nation pressed pause. Even at the staid Supreme Court, "where decorum is everything," a messenger "passed a note about the Simpson verdicts to the grand mahogany bench, and the justices discreetly handed it to one another."[1] The obsession is global. Consider the trials of Sir Marshall Hall, an idolized barrister from Edwardian-era England. Jurors collapsed and judges wept at his magnetic oratory. Spectators crammed into dank courtrooms to hear the lurid details of gruesome

---

[1] Paul Duggan, *Washington Comes to a Stop*, WASH. POST (Oct. 4, 1995), https://wapo.st/2RIQ1z7.

crimes. Many of his cases were so renowned they even had names, like the "Brides in the Bath."[2]

Electrifying criminal trials are uncommonly significant—and today, significantly uncommon. Federal criminal jury trials don't happen much anymore:

- Roughly 97 percent of federal criminal offenders plead guilty.[3]
- About 47 percent of federal criminal appeals—like this one—are sentencing-related.[4]

Surprisingly, abstruse sentencing disputes don't rivet public attention. Even the Supreme Court acknowledges as much, charitably describing the 600-page Federal Sentencing Guidelines Manual (read: tome) as "complex."[5] But in this age of the vanishing criminal jury trial, when convictions result overwhelmingly from pleas, sentencing takes on outsized importance.

The question in this sentencing appeal is simply stated: May a district court impose special conditions of supervised release in its written judgment without orally pronouncing them at the sentencing hearing? Admittedly, our decisions are somewhat uneven as to what constitutes an opportunity to object,

---

[2] *See generally* SALLY SMITH, MARSHAL HALL: A LAW UNTO HIMSELF (Wildy, Simmonds & Hill 2016).

[3] GLENN R. SCHMIDT & ELIZABETH JONES, U.S. SENTENCING COMM'N, OVERVIEW OF FEDERAL CRIMINAL CASES: FISCAL YEAR 2016, at 94 (May 2017) ("In fiscal year 2016 the vast majority of offenders (97.3%) pleaded guilty.").

[4] *Compare* U.S. COURTS, FEDERAL JUDICIAL CASELOAD STATISTICS 2017 tbl.B-1 (2017), http://www.uscourts.gov/sites/default/files/data_tables/fjcs_b1_0331.2017.pdf (listing total number of criminal cases across all federal circuits), *with* 2017 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS tbl.55 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table55.pdf (listing types of criminal appeals—"sentence only," "sentence and conviction," etc.—across all federal circuits).

[5] *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016). The Manual has a one-star rating on Amazon. The lone reviewer laments, "My copy is printed upside down," adding, "I am fairly disappointed." Lakshmi, *Customer Review*, AMAZON (Sept. 11, 2018), https://amzn.to/2RLedkA.

which in turn determines which standard of review applies (plain error v. abuse of discretion). Our holding: When a defendant had no opportunity to object to special conditions (because they were unmentioned at sentencing), we review for abuse of discretion, and any "unpronounced" special conditions must, upon remand, be stricken from the written judgment.

## I

Jonathan Rivas-Estrada was in the meth business. When Homeland Security busted him, he pleaded guilty to various felony charges. This is where things get sticky.

Before sentencing, the probation officer issued a presentence report (PSR)—standard fare. The appendix to the PSR had one page of special supervised-release conditions. Rivas-Estrada had ample time to review the PSR; the district court even gave him a two-week extension to file objections. In that time, Rivas-Estrada asked for a sentence reduction, but his 35-page filing never mentioned the special conditions. At sentencing, the court confirmed that Rivas-Estrada had reviewed the PSR with his lawyer. The court also made sure that he understood it and that his lawyer had no comments, changes, or objections to it.

The district court then sentenced Rivas-Estrada. Besides hard time, the court imposed five years of supervised release. In closing, the court stated that Rivas-Estrada must "comply with the mandatory and special conditions that have been adopted and set forth in [his] Presentence Report." *Mandatory* (or standard) conditions need not be recited orally as they are "implicit in the very nature of supervised release."[6] But *special* conditions require a specific oral pronouncement. Here, the district court's written judgment contained three

---

[6] *United States v. Torres-Aguillar*, 352 F.3d 934, 936 (5th Cir. 2003) (cleaned up).

No. 17-40033

special conditions of supervised release that were not pronounced orally at sentencing:

1. Rivas-Estrada had to surrender himself for deportation after serving his time.

2. He had to give requested financial information to his probation officer.

3. He had to participate in, and pay for, drug testing and treatment.

Rivas-Estrada contends that the district court abused its discretion; he argues that the written judgment conflicts with the oral pronouncement; and he asks that we strike the special conditions from the written judgment. The Government urges us to review for plain error since Rivas-Estrada never objected. The Government also claims there's no conflict between the written judgment and what was orally pronounced: "The written judgment merely clarified the sentencing court's oral pronouncement without adding to it."

II

The standard of review is critical because, by setting our scrutiny level, it helps determine whether we order changes to the judgment.[7] If Rivas-Estrada had no opportunity to object to the special conditions, we review for abuse of discretion.[8] If he did but failed to object, plain error applies.[9]

Abuse of discretion applies here. The "opportunity to object" requirement isn't formalistic. It's practical. That's why in some unpublished cases, we've

---

[7] *Compare United States v. Bishop*, 603 F.3d 279, 280–82 (5th Cir. 2010) (affirming, on plain-error review, a special condition requiring mental health treatment "as deemed necessary and approved by the probation officer"), *with United States v. Franklin*, 838 F.3d 564, 566–67 (5th Cir. 2016) (vacating, under the abuse-of-discretion standard, an identical condition).

[8] *United States v. Mudd*, 685 F.3d 473, 480 (5th Cir. 2012); *Torres-Aguilar*, 352 F.3d at 935.

[9] *United States v. Huor*, 852 F.3d 392, 397–98 (5th Cir. 2017) (citing *United States v. Salazar*, 743 F.3d 445, 448 (5th Cir. 2014)).

called it a "meaningful opportunity to object."[10] The point is to give fair notice. For example, in *Warden*,[11] the district court pronounced special conditions of drug treatment and counseling. Yet the judgment also directed the defendant to pay the costs of that treatment and counseling. Springing costs on the defendant gave him no chance to object.[12] And in *Hudson*, an unpublished opinion cited by Rivas-Estrada, we held that the district court abused its discretion by not "ask[ing] any targeted questions about supervised-release conditions."[13] Instead, the court "merely asked Hudson general and routine questions about the PSR, only a small portion of which was devoted to recommending" special conditions.[14] Our caselaw demands more—notwithstanding our unpublished *Cox* opinion cited by the Government.[15]

At minimum, the district court must orally enumerate each special condition. Otherwise, the defendant has no meaningful opportunity to object. Merely referencing a PSR that lists special conditions (here, in the appendix) isn't enough. Alone, it doesn't put the defendant on notice of which conditions the court will impose.

Consider *Bigelow*.[16] There, we found it problematic that the defendant didn't know "at sentencing [that the] special conditions would be imposed later in the written judgment."[17] And in *Morin*,[18] the PSR recommended several

---

[10] *E.g.*, *United States v. Reyes*, 734 F. App'x 944, 947–48 (5th Cir. 2018); *United States v. Hudson*, 625 F. App'x 686, 689 (5th Cir. 2015). We ordinarily do not cite unpublished opinions, which carry no precedential weight. But since the unpublished cases cited by both parties suggest uncertainty about what constitutes an opportunity to object, we discuss them in hopes of providing bright-line guidance for future litigants.

[11] *United States v. Warden*, 291 F.3d 363 (5th Cir. 2002).

[12] *Id.* at 365 n.1.

[13] *Hudson*, 625 F. App'x at 688.

[14] *Id.*

[15] *United States v. Cox*, 672 F. App'x 506, 506–07 (5th Cir. 2017) (holding that referencing the PSR provides the defendant an opportunity to object).

[16] *United States v. Bigelow*, 462 F.3d 378 (5th Cir. 2006).

[17] *Id.* at 382.

[18] *United States v. Morin*, 832 F.3d 513 (5th Cir. 2016).

special conditions. The district court orally imposed two, but the written judgment contained an extra condition from the PSR. So the defendant had no chance to object.[19] PSRs merely show what the probation officer thinks is appropriate. They don't convey the court's intent.

Of course, the district court may do more than the minimum. Take *Rouland*.[20] In open court, the Government introduced a memo from the probation officer that recommended nine special conditions of supervised release. When asked if he had any objections to the exhibit, defense counsel answered, "No objections." This was a unique chance to object. So we applied plain-error review and affirmed the written judgment.[21] In our unpublished *Reyes* opinion,[22] we also reviewed for plain error because of unique facts: The district court imposed special conditions from the PSR. Yet the court had the PSR re-read to the defendant during the sentencing—giving him, as we noted, "a unique and 'meaningful opportunity to object, in open court, to the special conditions that the district court later imposed in its written judgment.'"[23]

But for Rivas-Estrada, the district court fell below our minimum. It didn't orally enumerate the special conditions. And unlike in *Rouland* and *Reyes*, there was no unique chance to object. So we review for abuse of discretion whether there's a conflict between the oral pronouncement and the written judgment.

---

[19] *Id.* at 515, 518–19.

[20] *United States v. Rouland*, 726 F.3d 728 (5th Cir. 2013).

[21] *Id.* at 730, 733–34.

[22] *United States v. Reyes*, 734 F. App'x 944 (5th Cir. 2018).

[23] *Id.* at 948 (quoting *Hudson*, 625 F. App'x at 690)).

No. 17-40033

III

We have repeatedly held that if a written judgment clashes with the oral pronouncement, the oral pronouncement controls.[24] As we've explained, this is based on the defendant's right to be present at sentencing.[25] And that comes from the Sixth Amendment's Confrontation Clause.[26]

Here, the written judgment cannot be squared with the oral pronouncement. Under our caselaw, there's a conflict when the written judgment broadens the pronounced requirements of supervised release.[27] Some conflicts are straight-forward. In *Mudd*, the district court pronounced special conditions of "drug and alcohol treatment instead of testing," but it then imposed testing anyway.[28] This was a conflict.[29] Yet there can also be a conflict when the district court simply imposes a written condition it didn't even mention at sentencing.

Recently, in *Huor*, we reviewed a special condition banning the defendant from living in or going to places that minors visit unless he had his probation officer's permission.[30] That conflicted with the oral pronouncement since the court didn't announce the condition at sentencing.[31] And in *Martinez*, we found a conflict when the written judgment ordered drug treatment, but the oral pronouncement didn't.[32] These written judgments conflicted the oral pronouncements because they were broader than the oral pronouncements.

---

[24] *E.g.*, *Mudd*, 685 F.3d at 480; *United States v. Mireles*, 471 F.3d 551, 557–58 (5th Cir. 2006); *Torres-Aguilar*, 352 F.3d at 935.

[25] *Morin*, 832 F.3d at 519; *Torres-Aguilar*, 352 F.3d at 935; *United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003).

[26] *Bigelow*, 462 F.3d at 381 (citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)).

[27] *E.g.*, *Mireles*, 471 F.3d at 558 (citing *United States v. Wheeler*, 322 F.3d 823, 828 (5th Cir. 2003); *United States v. Moreci*, 283 F.3d 293, 299–300 (5th Cir. 2002)).

[28] *Mudd*, 685 F.3d at 480.

[29] *Id.*

[30] *Huor*, 852 F.3d at 404.

[31] *Id.*

[32] *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001).

No. 17-40033

To see if a written judgment broadened the oral pronouncement, it's useful to compare the pronouncement's expressed purposes to the written judgment. In *Hudson*, for example, we emphasized that the district court failed to mention the special conditions in the PSR, "much less explain why . . . special conditions would be appropriate."[33] Omitting all special conditions makes it impossible to explain their purposes; having no explained purposes suggests a broadened written judgment.

Yet not all unpronounced conditions create conflicts. First, we've made clear that "explicit reference to each and every standard condition . . . is not essential to the defendant's right to be present at sentencing."[34] Second, in some cases we found no conflict when courts imposed costs associated with special conditions. *Warden* is a good illustration: We found no conflict despite the new written condition to pay the costs of the orally pronounced drug-treatment condition.[35] Similarly, in *Mireles*, we found that different wordings between the written judgment and pronouncement created no conflict.[36] Since it effectuated the pronouncement's function, the judgment wasn't broader.

But here, the district court merely *referenced* the PSR. Again, it never mentioned, even glancingly, any special conditions (included in an appendix), and so it couldn't explain their purposes. Nor were the new conditions mere costs for pronounced conditions. Since there were no pronounced special conditions at all, there were no pronounced functions; so the new conditions had no functions to further. For these reasons, the district court's written judgment broadened the oral pronouncement.

---

[33] *Hudson*, 625 F. App'x at 687.

[34] *Vega*, 332 F.3d at 853 n.8 (quotation omitted).

[35] *Warden*, 291 F.3d at 365.

[36] *Mireles*, 471 F.3d at 559.

8

No. 17-40033

Plus, our recent opinion in *Rouland*[37]—despite the Government's argument—bolsters our conclusion. True, in that case we reviewed for plain error, and the defendant lost. But still, we noted that there in fact was "a conflict between the oral sentence and the written judgment in [that] case."[38] We just reviewed more deferentially because of one-off circumstances, namely the defendant's unique chance to object to the special conditions.

In sum, the written judgment against Rivas-Estrada broadens the oral pronouncement. The two conflict. And the oral pronouncement controls.

\* \* \*

We VACATE in part Rivas-Estrada's sentence and REMAND for the district court to amend its written judgment by removing the three unpronounced special conditions.

---

[37] *Rouland,* 726 F.3d at 734.

[38] *Id.*