# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 8, 2020

Lyle W. Cayce
Clerk

No. 19-20520

United States of America,

*Plaintiff—Appellee*,

*versus*

Alton Joseph Thomas,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-676-1

Before Owen, *Chief Judge*, and Davis and Southwick, *Circuit Judges*.
Per Curiam:[*]

Alton Joseph Thomas appeals a discretionary condition of supervised release in his written judgment, arguing that it conflicts with the district court's oral pronouncement of his sentence. Because any discrepancy between the written judgment and oral pronouncement is a reconcilable

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

ambiguity, not a conflict, the district court did not abuse its discretion, and we AFFIRM.

**I**

Thomas pleaded guilty to one count of being a felon in possession of a firearm. When arrested, he was on deferred adjudication probation for a felony family violence assault. Thomas also has an extensive criminal history, spanning twenty convictions over an eighteen-year period. Relevant to this appeal, many of Thomas's convictions involved violent behavior toward women. The underlying offenses include armed robbery, harassment, violation of protective orders, and assault.

Thomas's presentence investigation report (PSR) noted this "history of assaultive behavior." The PSR also explained that Thomas reported previous diagnoses of depression and schizophrenia but had not been prescribed medication for these conditions and was not experiencing active symptoms. Finally, the PSR recommended several supervised–release conditions related to substance abuse but did not propose mental health treatment.

During the sentencing hearing, the district court gave Thomas an opportunity to speak. Thomas described his criminal record as "just an indication of [his] growth and the issues that [he] had to deal with," attributing several prior convictions to "[i]mproper thinking" and a faulty "thinking process." Addressing Thomas's frequent convictions, the court opined, "I think the problem is you like the life of being a tough guy and doing what you want when you want." Thomas disputed this assessment, stating that he "had issues, you know, trauma" and had "been through mental health." Thomas further explained that he had "been through a lot at a early age." The court asked when Thomas, then thirty-eight, had "quit being in an early age," and he replied, "When I gathered myself mentally."

No. 19-20520

Questioning Thomas about specific offenses, the court noted, "[Y]ou've got these issues that compel you to do things that are illegal. . . . What issue were you dealing with with the assault on a family member?" Again, Thomas blamed his "[i]mproper thinking." When the court mentioned the violent details of Thomas's offenses against women, Thomas once more referred to past "issues" and "trauma" that stunted his personal "grow[th]." The court replied, "Then turn yourself into [sic] a mental hospital where they can lock you up until you've gotten enough care that you can cope with your issues without violating the law in violent and recklessly [sic] means."

The court sentenced Thomas to sixty-three months' imprisonment followed by three years of supervised release. The court asked the probation officer what supervised–release conditions he recommended, and the officer repeated the conditions from the PSR—no possession of controlled substances without a prescription and submission to drug testing. The court then stated, "Drug tests. First of all, the general condition is that you don't violate the law again, like your deferred adjudication, you get drug help, but most of all you need to get some mental health help." Thomas responded, "I've been doing it. I've been working on myself for years. I'm not in denial of it, you know." Explaining its decision, the court proclaimed, "Yeah, you had issues. You took clubs to people, you robbed places with a shotgun-wielding co-partner. Your sentence is based on your proven dangerousness; and with that record of proven impetuosity, anger or whatever it is, your possession of a firearm is a serious problem for civilization." The court further explained, "I'm putting a sentence on you that . . . [reflects] your attitude that as long as you're dealing with issues you can do whatever you want to to people . . . ." At no point during the pronouncement did Thomas's counsel object.

3

No. 19-20520

The written judgment set forth two special conditions of supervised release:

> You must submit to substance-abuse testing to determine if you have used a prohibited substance, and you must pay the costs of testing if financially able. You may not attempt to obstruct or tamper with the testing methods.

> You must participate in a mental-health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program, including the provider, location, modality, duration, and intensity. You must pay the cost of the program, if financially able.

Thomas timely appealed.

## II

Thomas argues on appeal that the written judgment conflicts with the oral pronouncement by including the second discretionary condition of supervised release. This condition requires him to obtain mental health treatment, comply with applicable rules and regulations, and pay costs if financially able. Thomas asserts that we should vacate the written judgment and remand the case to the district court with instructions to conform the judgment to the oral pronouncement by removing this condition.

To respect a defendant's right to be present for sentencing, the district court must orally pronounce the sentence.[1] Pronouncement must include some, but not all, conditions of supervised release.[2] While "required" conditions need not be pronounced, "discretionary" conditions

---

[1] *United States v. Diggles*, 957 F.3d 551, 556-57 (5th Cir. 2020).

[2] *Id.* at 557.

4

must be pronounced to allow for objection.[3]  Here, it is undisputed that the mental health treatment condition is discretionary.  The question, then, is whether the district court pronounced this condition.  A discrepancy between the written judgment and the oral pronouncement occasions the parties' disagreement: While the written judgment unequivocally orders Thomas to "participate in a mental-health treatment program[,] . . . follow the rules and regulations of that program[, and] pay the cost of the program, if financially able," the oral pronouncement merely informed Thomas, "[T]he general condition is that you don't violate the law again, like your deferred adjudication, you get drug help, but most of all you need to get some mental health help."

### III

Thomas argues we should review for abuse of discretion, while the government contends plain error review should apply.  Because even applying the more stringent standard of review, the district court did not abuse its discretion, we need not resolve the applicable standard.

"[T]he key determination is whether the discrepancy between the [oral pronouncement and the written judgment] is a conflict or merely an ambiguity that can be resolved by reviewing the rest of the record."[4]  If the judgment conflicts with the pronouncement, the pronouncement controls,[5] and "the appropriate remedy is remand to the district court to amend the written judgment to conform to the oral sentence."[6]  "If, however, there is

---

[3] *Id.* at 559.

[4] *Sealed Appellee v. Sealed Appellant*, 937 F.3d 392, 400 (5th Cir. 2019) (quoting *United States v. Flores*, 664 F. App'x 395, 398 (5th Cir. 2016) (per curiam)).

[5] *See United States v. Rivas-Estrada*, 906 F.3d 346, 350 (5th Cir. 2018).

[6] *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006).

'merely an ambiguity' between oral and written sentences, 'then we must look to the intent of the sentencing court, as evidenced in the record to determine the defendant's sentence.'"[7]  Thomas asserts a conflict requiring us to vacate the written judgment and remand for removal of the mental health treatment condition.  The government, however, urges a mere ambiguity resolved by reviewing the record.  We agree with the government.

Unlike ambiguity, conflict occurs when a written judgment "broadens the restrictions or requirements of supervised release"[8] or "impos[es] a more burdensome requirement" than the oral pronouncement.[9]  Here, the written judgment does neither.  The pronouncement told Thomas that "most of all, you need to get some mental health help," while the judgment required him to (1) participate in a mental health treatment program, (2) follow its rules and regulations, and (3) pay its costs.

First, while "participat[ing] in a mental-health treatment program" is undoubtedly more specific than "get[ting] some mental health help," the former does not impose "broad[er] . . . restrictions" or "more burdensome requirement[s]" than the latter.[10]  The judgment does not foist a "heightened burden" on Thomas by curtailing conduct the pronouncement

---

[7] *United States v. Vasquez-Puente*, 922 F.3d 700, 703 (5th Cir. 2019) (internal quotation marks omitted) (quoting *United States v. Torres-Aguilar*, 352 F.3d 934, 935 (5th Cir. 2003) (per curiam)).

[8] *Id.* (quoting *United States v. Mudd*, 685 F.3d 473, 480 (5th Cir. 2012)).

[9] *Sealed Appellee*, 937 F.3d at 400 (alteration in original) (quoting *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006)); *see also Bigelow*, 462 F.3d at 383-84 (perceiving conflict when the pronouncement compelled the defendant to *tell* his probation officer about every form of identification he obtained, while the judgment required him to obtain *prior approval* before seeking any such document).

[10] *Sealed Appellee*, 937 F.3d at 400.

would allow.[11]  Second, the judgment's requirement that Thomas comply with "the rules and regulations of the treatment agency is, for obvious reasons, consistent with the . . . treatment condition ordered at sentencing."[12]  Third, while the judgment compels payment of associated costs, this provision does not breed conflict.[13]  "[T]he requirement that [the defendant] bear the costs of the ordered treatments is clearly consistent with the district court's intent that he attend [that] treatment."[14]  Thus, instead of broadening the oral pronouncement, the written judgment simply defines its scope and clarifies Thomas's obligations in obtaining "mental health help."

Conflict can also arise when the written judgment includes discretionary conditions wholly unmentioned at sentencing.[15]  By contrast, when the pronouncement explicitly refers to the condition, despite wording it differently or framing it as a recommendation, no conflict results.[16]

---

[11] *Bigelow*, 462 F.3d at 383.

[12] *United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003) (per curiam) (internal quotation marks omitted).

[13] *See United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002) (no conflict arose when the pronouncement required drug abuse counseling and the judgment also imposed costs for the counseling).

[14] *Id.*

[15] *See, e.g.*, *United States v. Rivas-Estrada*, 906 F.3d 346, 348, 351 (5th Cir. 2018) (identifying conflict when the judgment imposed specific conditions from the PSR while the pronouncement "merely *referenced* the PSR" but "never mentioned, even glancingly" the conditions contained therein); *United States v. Morin*, 832 F.3d 513, 519 (5th Cir 2016) (conflict existed when the court "fail[ed] to rule on [the defendant's] objection to" a condition from the PSR and was "silen[t]" about the condition during pronouncement, but then included it in the written judgment).

[16] *See United States v. Franklin*, 838 F.3d 564, 567 (5th Cir. 2016) (discerning no conflict when the pronouncement "recommend[ed] mental health treatment" while the

Instead, such a reference creates an ambiguity.[17]   Here, no conflict occurs because the pronouncement specifically referred to Thomas's clear need for "mental health help."   By mentioning mental health treatment, albeit in different terms than the written judgment, the pronouncement generated an ambiguity.

To resolve this ambiguity and determine Thomas's sentence, "we must look to the intent of the sentencing court, as evidenced in the record."[18] In *United States v. Vasquez-Puente*, for example, the court's pronouncement warned that because Vasquez-Puente had previously been deported, he could not be legally present in the United States.[19]   During sentencing, the defense attorney also explained that he had cautioned his client against reentering the country, and Vasquez-Puente himself apologized for his illegal presence.[20] The written judgment later required him to, among other things, surrender to immigration officials and follow their instructions during deportation proceedings.[21]   Discerning only an ambiguity, we upheld the judgment as consistent with the court's intent that Vasquez-Puente be deported upon release from prison.[22]   The record revealed that his unlawful presence was a recurring motif throughout the sentencing hearing.[23]   Although "it would have been better had the district court expressly enumerated the surrender

---

judgment "required . . . participat[ion] in a mental health program" at the probation officer's direction).

[17] *See id.*

[18] *Warden*, 291 F.3d at 365.

[19] *United States v. Vasquez-Puente*, 922 F.3d 700, 702 (5th Cir. 2019).

[20] *Id.* at 705.

[21] *Id.* at 702.

[22] *Id.* at 705.

[23] *Id.*

condition" during pronouncement, verbal imprecision did not amount to an abuse of discretion.[24]

So too here. Thomas's mental health was a focal point of sentencing, and the record demonstrates that the written mental health condition, while not "expressly enumerated," nonetheless clearly serves "the district court's intent" that Thomas obtain treatment.[25] Throughout the hearing, Thomas attributed his past offenses to "issues," "trauma," and "improper thinking." At one point, the court pressed Thomas, asking him whether he had seen a psychiatrist, to which Thomas replied, "I've been through mental health." When the court expressed concern at Thomas's violent offenses against women, Thomas reasserted that he had "been through some trauma." The court responded, "Then turn yourself into [sic] a mental hospital where they can lock you up until you've gotten enough care that you can cope with your issues without violating the law in violent and recklessly [sic] means." Shortly thereafter, the court pronounced the sentence, including Thomas's pressing need for "mental health help." Thomas immediately replied, "I've been doing it. I've been working on myself for years. I'm not in denial of it, you know." Justifying the sentence, the court explained, "Your sentence is based on your proven dangerousness; and with that record of proven impetuosity, anger or whatever it is, your possession of a firearm is a serious problem for civilization." Later still, the court claimed the sentence also reflected Thomas's attitude that "as long as [he was] dealing with issues[, he could] do whatever [he] want[ed] to to people." In short, the theme of Thomas's mental health recurred throughout the sentencing hearing. Thomas himself attributed his recidivism to unresolved

---

[24] *Id.*

[25] *Id.*

emotional trauma.  The court, in turn, defended the sentence as necessary to address these issues and deter further crime.  Thus, the district court clearly intended for Thomas to obtain treatment.

In sum, we discern no conflict between the oral pronouncement and written judgment.  The judgment does not broaden the pronouncement's requirements, and the pronouncement explicitly mentioned mental health "help."  Instead, any discrepancy between the two is an ambiguity resolved by the court's clear intent that Thomas undergo treatment.  Thus, we conclude that the district court did not abuse its discretion by including the contested condition in its written judgment.

*    *    *

For the foregoing reasons, we AFFIRM.