**UNITED STATES of America,**
**Appellee,**

**v.**

**Christopher THOMAS, aka Chris Reese, aka Chris Thomas, Defendant–Appellant.**

**Docket No. 01–1538.**

United States Court of Appeals, Second Circuit.

Argued: June 20, 2002.

Decided: Aug. 15, 2002.

Mark B. Gombiner, The Legal Aid Society, Federal Defender Division, Appeals Bureau (Colleen P. Cassidy, on the brief), New York, NY, for Defendant–Appellant.

Before CALABRESI, SACK, and B.D. PARKER, JR., Circuit Judges.

B.D. PARKER, Jr., Circuit Judge.

Christopher Thomas appeals from a judgment of conviction and sentence entered on October 17, 2001 in the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*). Thomas challenges five of the conditions of his supervised release that were included in the written judgment, but had not been articulated orally at his sentencing hearing. We affirm with respect to all but one of these conditions because their imposition is either routine or recommended by United States Sentencing Guidelines ("U.S.S.G.") section 5D1.3. The remaining condition, however, was imposed in violation of Rule 43(a) of the Federal Rules of Criminal Procedure. We vacate and remand with instructions for the District Court to enter a written judgment that conforms to the sentence imposed orally.

## BACKGROUND

Thomas was indicted in April 2001 on charges of access device fraud and bank fraud in violation of 18 U.S.C. § 1029(a)(5), (b)(1) and § 1344. In July 2001, pursuant to a written plea agreement, Thomas pled guilty to one count of access device fraud, admitting that he charged between $70,000 and $120,000 on credit cards that did not belong to him.

Following Thomas's plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR") in which it recommended a sentence of imprisonment and proposed that Thomas pay

Miriam Rocah, Assistant United States Attorney, for James P. Comey, United States Attorney for the Southern District of New York (David Raymond Lewis, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

restitution in the amount of $101,165.98.[1] The report also recommended a three-year term of supervised release and enumerated three mandatory, thirteen standard, and five special conditions of supervision. *See* U.S.S.G. § 5D1.3(a) (setting forth mandatory conditions of supervised release); *id.* § 5D1.3(c) (setting forth "standard" conditions of release, the imposition of which is "recommended" in all cases); *id.* § 5D1.3(d) (setting forth "special" conditions of release, the imposition of which is "recommended [only] in the circumstances described [in the provision]"); *see also id.* § 5D1.3(b) (permitting courts to impose other conditions of release so long as they are reasonably related to the purposes of punishment as articulated by the Sentencing Commission).[2]

At the sentencing hearing on October 11, 2001, the District Court sentenced Thomas to forty one months' imprisonment. The court also imposed restitution, a $100 special assessment, and a three-year term of supervised release. The court did not set forth any conditions of the supervision during the sentencing hearing, nor did it indicate that it would incorporate the conditions listed in the PSR. On October 17, 2001, however, the District Court issued a written judgment that included all of the conditions recommended in the PSR.[3] Specifically, under the heading, "Special Conditions of Supervision," the judgment included the following five "special" conditions recommended in the PSR:

1. The defendant shall provide the probation officer with access to any requested financial information.

2. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

3. The defendant shall not possess any identification in the name of another

person or in any matter assume the identity of any other person.

4. The defendant shall report to the nearest Probation Office within 72 hours of release from custody.

5. The defendant shall be supervised by the district of residence.

On appeal, Thomas argues that, because these five conditions of supervised release were not orally imposed by the court during the sentencing hearing, the written judgment violates Rule 43(a) of the Federal Rules of Criminal Procedure.

## DISCUSSION

■ Rule 43(a) requires that "[t]he defendant ... be present at ... the imposition of sentence...." In light of this rule, we have held that "[i]t is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence," and "the written judgment ... [is] nothing more than mere evidence of the sentence imposed orally in court by the judge." *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir.1974) (internal citations and quotations

1. The PSR initially proposed a sentencing range of 24 to 30 months, but the District Court amended the PSR after concluding that Thomas' criminal history category should be increased two levels, thereby raising the sentencing range to 33 to 41 months.

2. Two of the conditions labeled "special" in the PSR are set forth in § 5D1.3(d). The

three remaining "special" conditions are not listed in § 5D1.3(d) and were, therefore, imposed pursuant to 5D1.3(b).

3. An amended judgment specifying the exact amount of restitution owed to various parties was entered on January 11, 2002.

omitted). Therefore, "[w]here an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *United States v. A–Abras Inc.,* 185 F.3d 26, 29 (2d Cir. 1999); *see also United States v. Asuncion–Pimental,* 290 F.3d 91, 93 (2d Cir.2002) (per curium); *United States v. Truscello,* 168 F.3d 61, 62 (2d Cir.1999).

▮ Thomas argues that the "special" conditions of supervised release conflict with his oral sentence, which did not specify any particular conditions of supervision. He does not challenge the mandatory or standard conditions, conceding that, under *Truscello,* "[t]he imposition of a term of supervised release may include by implication the 'standard' or mandatory conditions of supervision." (Br. for Appellant at 7.) In *Truscello* we held that a written judgment does not conflict with an oral sentence where a district court fails to specify conditions of supervised release orally, but nevertheless includes in the written judgment conditions listed as mandatory or standard in U.S.S.G. § 5D1.3(a) or (c). 168 F.3d at 63–64. While recognizing that Rule 43(a) prohibits a written judgment from conflicting with a sentence imposed orally, we noted that "it is permissible for the written judgment to resolve genuine ambiguities in the oral sentence." *Id.* at 62–63. Because it is "[i]mplicit in the very nature of supervised release [ ] that certain conditions are necessary to effect its purpose," *id.* at 62, we found that, rather than conflicting with the oral sentence, the standard and mandatory conditions listed in the written judgment "reflected a clarification of what the oral pronouncement meant by 'supervised release,'" *id.* at 63.

*Truscello* was based in part on our conclusion that the standard conditions are "basic administrative requirement[s]," *id.,* and are "generally so appropriate to effect the purpose of supervised release that any argument ... that they ... conflict with [the] oral sentence[ ] would be disingenuous," *id.* at 64. The case, however, did not address whether conditions of release other than those set forth in § 5D1.3(a) or (c) can properly be included in a written judgment if they were not imposed orally. Thomas argues that *Truscello* should not be extended to such conditions of supervision because they are not "basic administrative requirement[s] essential to the functioning of the supervised release system." *Id.* at 63 (quoting *United States v. Smith,* 982 F.2d 757, 764 (2d Cir.1992)). Following the briefing in this case, we decided *United States v. Asuncion–Pimental,* 290 F.3d 91 (2d Cir.2002) (per curium), in which we extended *Truscello* to the special condition of supervised release set forth in U.S.S.G. § 5D1.3(d)(1), which recommends that a defendant who is, *inter alia,* convicted of a felony, be prevented from possessing a firearm or destructive device. Recognizing that both the standard conditions set forth in § 5D1.3(c) and the special conditions set forth in § 5D1.3(d) are recommended by the Guidelines,[4] we found that the special condition listed in 5D1.3(d)(1) was just as necessary to the administration of supervised release as the standard conditions, even though it only applied in particular circumstances:

> The fact that the condition concerning firearm possession is labeled "special" by the Guidelines is irrelevant in this case. While the "standard" conditions provided in § 5D1.3(c) are presumed suitable in all cases, the suitability of the special conditions as "recommended in the circumstances described."

---

4. Section 5D1.3(c) defines the standard conditions of release as "recommended for supervised release"; Section 5D1.3(d) defines the

conditions provided in § 5D1.3(d) may be contingent on the presence of specific factors in each case. Where these factors are present, however, these "special" conditions are no different in practical terms from "standard" conditions, that is, they are generally recommended.

*Asuncion–Pimental*, 290 F.3d at 94. Because the defendant in *Asuncion–Pimental* was convicted of a felony, the Guidelines recommended that the court impose the condition set forth in § 5D1.3(d)(1). We found that, "[i]n these circumstances, the 'special' condition recommended in § 5D1.3(d)(1) is as standard as those conditions recommended in § 5D1.3(c)," and we upheld the imposition of the condition in the written judgment. 290 F.3d at 95.

■ Like the condition at issue in *Asuncion–Pimental*, the first two "special" conditions in Thomas's written judgment are listed in § 5D1.3(d).[5] The first "special" condition mirrors § 5D1.3(d)(3), titled "Access to Financial Information," which recommends: "If the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine—a condition requiring the defendant to provide the probation officer access to any requested financial information." The second "special" condition mirrors § 5D1.3(d)(2), titled "Debt Obligations," which recommends: "If an installment schedule of payment of restitution or a fine is imposed—a condition prohibiting the defendant from incurring new credit charges or opening additional lines of credit without approval of the probation officer unless the defendant is in compliance with the

payment schedule." Because the District Court required Thomas to pay restitution, the Guidelines recommend the imposition of these conditions, and the District Court's failure to articulate them orally is irrelevant under *Asuncion–Pimental*.

■ Unlike the condition at issue in *Asuncion–Pimental* and the first two "special" conditions in this case, the third, fourth, and fifth "special" conditions of Thomas's release are not enumerated in § 5D1.3. But the fourth and fifth conditions—that Thomas report to the nearest probation office within seventy-two hours of release from custody and that he be supervised by the district of his residence—are clearly "basic administrative requirement[s]" that are "necessary to supervised release." *Truscello*, 168 F.3d at 63, 64. These terms provide essential details for Thomas's compliance with the enumerated standard conditions, such as § 5D1.3(c)(2)'s requirement that "the defendant . . . report to the probation officer as directed by the court or probation officer. . . ." Because these conditions are routinely-imposed administrative requirements, their inclusion in the written judgment does not violate Rule 43(a).

■ The applicability of *Truscello* and *Asuncion–Pimental* to the third "special" condition of Thomas's release compels a different result. To some extent, this condition—which prohibits Thomas from "possess[ing] any identification in the name of another person or in any matter assum[ing] the identity of any other person"—augments the mandatory requirement that Thomas not commit another

---

5. During oral argument, Thomas conceded that *Asuncion–Pimental* was controlling as to all of the special conditions except the third. In a letter brief submitted after oral argument, however, Thomas once again argued that all the special conditions of release were imposed illegally. (Letter Br. of June 27, 2002 at 3, 4 n. 1.) Because it is unclear whether Thomas intended to forfeit his appeal as it pertains to the first, second, fourth, and fifth "special" conditions of release, we will discuss the legality of all five of these conditions.

federal, state, or local offense. *See* U.S.S.G. § 5D1.3(a)(1), 18 U.S.C. § 3583(d) (2000).[6] But this condition also incorporates non-criminal behavior. For example, Thomas would be in violation of this requirement if he were to carry anyone else's identification—including that of a family member—even if he had their permission. To the extent that this "special" condition encompasses such non-criminal behavior, it does not overlap with any of the mandatory or standard conditions of release. Further, unlike the fourth and fifth "special" conditions of Thomas's release, this requirement is not necessary to clarify or carry out any of § 5D1.3's mandatory or standard conditions. Accordingly, we find that this condition is not a basic requirement for the administration of Thomas's release.

In *Truscello,* we held that conditions of release that are basic, administrative requirements may be set forth for the first time in a written judgment because they clarify the meaning of the term 'supervised release,' as imposed during oral sentencing, 168 F.3d at 63, but we have not yet determined whether our reasoning in *Truscello* extends to conditions that govern more than the basic administration of the release.[7] We hold today that it does not. Prior to *Truscello,* we decided *United States v. Marquez,* 506 F.2d 620 (2d Cir.1974), in which we refused to allow a district court to implement such a non-basic condition of release in the written judgment because it had not been imposed during the sentencing hearing. In that case, the district court orally sentenced the defendant to a five-year prison term and a $10,000 fine. The written judgment further required the defendant to remain committed until he paid the fine—a condition that had not been mentioned during the sentencing hearing. We found that "Marquez was sentenced orally by the judge without the commitment condition," and that "the oral pronouncement of sentence below [was] clear and unambiguous." *Id.* at 622. Because "[t]he sentence given Marquez in open court by the trial judge was the only valid sentence imposed," and "after imposing sentence in a defendant's presence, the Court cannot thereafter increase the sentence with [the] defendant absent," we ordered the district court to correct the written judgment by eliminating the commitment requirement. *Id.*

Following *Marquez,* we decline to extend our holding in *Truscello* to conditions of supervision that are neither mandatory under, nor specifically recommended by, the Guidelines and that are not a basic requirement for the administration of supervised release. For, such terms do not simply clarify ambiguity in the oral imposition of supervised release, they place additional burdens on the defendant that are neither necessary to nor a foreseeable result of the imposition of supervised release. Accordingly, we find that the District Court's inclusion of the third "special" condition of release in Thomas's written judgment violated Rule 43(a).

---

**6.** There are numerous federal, state, and local laws barring possession of, creation of, and transactions involving false identifying documents and criminal impersonation. *See, e.g.,* 18 U.S.C. § 1028 (2000); N.Y. Penal Law § 190.25(1) (McKinney 1998).

**7.** In *Asuncion–Pimental,* we alluded to this issue, noting that "[o]ur opinion in *Truscello* may be read to suggest that there can never be a 'direct conflict' between a written judg-

ment specifying supervised release conditions and an oral judgment that says nothing about such conditions." 290 F.3d at 94 n. 2. Because we found in *Asuncion–Pimental* that the challenged condition was "effectively a 'standard' one," it was not necessary for us to determine whether our decision in *Truscello* reached non-standard conditions of supervision. *Id.*

We recognize that the line between what Rule 43(a) requires district courts to articulate orally and what it does not may be subtle at times. But the problems presented by *Truscello, Asuncion–Pimental,* and this case can be avoided rather easily if district courts take the time to state the defendant's sentence and to indicate the conditions that accompany it in open court and with appropriate precision. Rule 43(a) contemplates that the full sentence will be imposed in this manner, and we see no justification for the further erosion of the Rule. Further, this procedure serves the salutary function of insuring that a defendant fully understands the contours of his punishment at a time when any questions he or his lawyer may have can be explored and resolved in person. We are mindful that, in the era of the Federal Sentencing Guidelines, the need to properly determine offense levels, role adjustments, offense characteristics, and the like often imposes intricate and complex tasks on busy district courts. We believe, however, that requiring district courts to make clear during the sentencing hearing exactly which conditions of release it intends to impose adds only minimally to these responsibilities.

## CONCLUSION

For the foregoing reasons, we affirm the judgment in part and vacate it in part, and remand to the District Court with directions to conform the written judgment to the oral sentence by striking the offensive condition of release. *See Marquez,* 506 F.2d at 623.[8]

---

8. At oral argument, the parties were asked to discuss the possibility of allowing the District Court to resentence Thomas on remand. Because the government has not requested such relief, however, we need not address this possibility.