20-1020-cr
*United States v. Patrick W. Carlineo, Jr.*

# In the
# United States Court of Appeals
## For the Second Circuit

—————————————————————

August Term, 2020

No. 20-1020-cr

UNITED STATES OF AMERICA,

*Appellee,*

v.

PATRICK W. CARLINEO, JR.,

*Defendant-Appellant.*

—————————————————————

Appeal from the United States District Court
for the Western District of New York.
No. 6:19-cr-06140-FPG
Frank P. Geraci, Jr., District Judge.
(Argued February 11, 2021; Decided May 25, 2021)

Before:      PARKER, LOHIER, and MENASHI, *Circuit Judges.*

Defendant-Appellant Patrick W. Carlineo, Jr. pled guilty to charges under 18 U.S.C. § 115(a)(1)(B) (threatening a federal official) and 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon). The charges derived from calls he made to the office of Congresswoman Ilhan Omar in which he made threatening

statements. The United States District Court for the Western District of New York (Geraci, *J.*) sentenced Carlineo to a year and a day in prison and three years of supervised release. Along with standard supervised release conditions, the district court also imposed a special condition, which required Carlineo to participate in a program known as the Partners in Restorative Initiatives. On appeal, Carlineo challenges the special condition contending that it (i) is vague, (ii) impermissibly delegates authority to the probation office, and (iii) is not reasonably related to the offense. We agree on the first two grounds and, accordingly, we **VACATE** the special condition.

---

SONYA A. ZOGHLIN, Federal Public Defender's Office, Western District of New York, Rochester, New York, *for Defendant-Appellant.*

TIFFANY H. LEE (Assistant United States Attorney, *on the brief*), *for* JAMES P. KENNEDY, JR., United States Attorney, United States Attorney's Office for the Western District of New York, Buffalo, New York, *for Appellee.*

---

BARRINGTON D. PARKER, *Circuit Judge*:

Patrick W. Carlineo, Jr. appeals from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*) sentencing him to incarceration for one year and one day and to three years of supervised release. On appeal, Carlineo challenges a special condition of supervised release which requires him to participate in a program known as the Partners in Restorative

Initiatives ("the Program" or "Partners"). We acknowledge that the District Court was sensitive in its efforts to fashion a sentence that appropriately responded to the offense Carlineo committed and that it was imaginative in reaching out for the unusual special condition that is the subject of this appeal. But we nonetheless hold that the special condition is too vague and delegates too much authority to the Probation Office. Accordingly, we vacate the special condition.

The facts are as follows. On March 21, 2019, Carlineo called the office of Congresswoman Ilhan Omar, the representative of Minnesota's Fifth Congressional District, from his home in Addison, New York. On the call, Carlineo spoke to a staff member to whom he said, "Do you work for the Muslim Brotherhood? Why are you working for her? She's a fucking terrorist. I'll put a bullet in her fucking skull." Carlineo left his name and contact information with the staff member, who ultimately reported the call to law enforcement. Shortly thereafter, two FBI agents visited Carlineo's home. The agents interviewed him, and he admitted making the call. He explained to the FBI agents that he made the call because he hates individuals he views as radical Muslims holding government positions and believes that Congresswoman Omar supports Hamas

and the Muslim Brotherhood. During the questioning, Carlineo also admitted that he had firearms in his home. Carlineo told the FBI agents that he had no intention of actually hurting any member of Congress and assured them that he would cease making threats to do so. The agents left his residence but later returned and arrested him after executing a search warrant. The search yielded shotguns, rifles, and a pistol.

Carlineo was released on bail and, while on bail, completed drug and mental health treatment programs. After waiving indictment, he pled guilty to charges of being a felon in possession of a firearm and of threatening a federal official.

The plea agreement called for a Guidelines range of 12 to 18 months imprisonment. In contrast, the Presentence Investigation Report calculated a Guidelines range of 21 to 27 months imprisonment after applying an enhancement under U.S.S.G. § 3A1.1(a) for targeting Congresswoman Omar because of her religion. Carlineo objected to this enhancement, arguing that his conduct was motivated by Omar's political beliefs, not her religion.

Before sentencing, the district court received a letter from Will Bontrager, who identified himself as the founder of the Program, which provides

community-based sentencing options. Congresswoman Omar also wrote to the court asking it to consider a restorative justice approach when sentencing Carlineo, as opposed to incarceration or a financial penalty. Bontrager's letter suggested "possible restorative justice options" for the district court to consider, including: (1) a sentencing circle, (2) a listening circle, (3) a combination of the listening circle and community service, and (4) community service. Neither the Probation Office nor the district court had sought assistance from Partners.

At sentencing, the district judge rejected the application of the three-level hate crime motivation enhancement. While the court noted its concern about Carlineo's use of the word "Muslims," it declined to find that Carlineo targeted Congresswoman Omar on account of her Muslim religion as opposed to what Carlineo considered were her "political beliefs." The district court sentenced Carlineo to one year and one day in prison and a three-year period of supervised release. The court imposed standard as well as special conditions of supervised release. The special conditions included, among other things, requirements that Carlineo continue to participate in a substance abuse and mental health treatment program. In addition, the district court imposed a special condition requiring Carlineo to "participate in the Partners in Restorative Initiatives

5

program . . . and that's going to involve [] participating in a program which could include a sentencing circle . . . [a] listening circle as well . . . [and] the defendant would need to listen to stories about Muslim refugees or people who suffered from violence [for] being Muslim."

Prior to imposing this condition, it does not appear that either the district court or the Probation Office had any particular familiarity with Partners. In contrast to substance abuse or mental health programs, which are reviewed and evaluated by Probation offices prior to referrals, there is no indication in the record that Partners was subjected to any such review or that either the district court or the Probation Office had prior experience with the Program.

A short while after sentencing, Carlineo filed an objection to the special condition, but the district court adhered to its decision to impose it. This appeal followed.

**DISCUSSION**

We review the district court's imposition of this condition of supervised release for abuse of discretion, a standard that the government does not contest. *See United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019); *see also United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008). District courts have broad discretion in

setting conditions of supervised release. However, this discretion is not boundless, and we are required to carefully scrutinize unusual or severe conditions. *See United States v. Brown*, 402 F.3d 133, 137 (2d Cir. 2005); *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018).

Special conditions must meet certain statutory requirements. A special condition must be reasonably related to "(A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." U.S.S.G. § 5D1.3(b); *accord* 18 U.S.C. § 3583(d)(1). Moreover, a special condition may not involve a "greater deprivation of liberty than is reasonably necessary for [the sentencing] purposes" set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d)(2); *accord* U.S.S.G. § 5D1.3(b).

Before imposing a special condition, a district court must conduct an "individualized assessment" and state on the record its reasons for imposing it. *Betts*, 886 F.3d at 202. In addition, a condition must be clear enough to put an

ordinary person on notice of the prohibited conduct. We have held that a defendant has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct is prohibited so that he may act accordingly. A condition is too vague if it requires a reasonable person to speculate as to its meaning. *See United States v. Reeves*, 591 F.3d 77, 80–81 (2d Cir. 2010). Carlineo argues that the special condition in question is (i) vague, (ii) impermissibly delegates authority to the probation office, and (iii) is not reasonably related to the offense. We agree with Carlineo on the first two grounds, and do not address the third.

**I.**

The condition prescribed by the district court is vague because it would leave a reasonable person guessing as to what the requirements of the Program might be. During sentencing, the district court orally instructed Carlineo to participate in the program and noted that participation could include a sentencing circle and a listening circle and that he would need to listen to stories about Muslim refugees or people who suffered from violence for being Muslim. However, exactly what this might entail is not clear. No guidance was given as to what specific activities the sentencing circle and or the listening circle would

8

involve. And none was given as to the required frequency of the circle sessions or as to what "successful participation" might look like. When imposing the condition, the district court relied on the letter from Bontrager, but the letter did not resolve these uncertainties. The letter refers to "restorative justice sentencing [program] options," including the "Sentencing Circle," the "Listening Circle," the "Combination listening circle and community service," and "Community service." The letter goes on to describe each of these activities as "options," but does not state which options or combination of options would constitute satisfactory participation. Moreover, the letter contemplates that the district court would choose among the program options listed and incorporate them into its sentence. App. 143 ("I am writing to suggest possible restorative justice options *you may choose* to consider in sentencing him." (emphasis added)). However, neither the district court's oral pronouncement nor its judgment clarified which of the specific options Carlineo was required to engage in to fulfill the special condition.

The special condition also fails for vagueness because it does not put Carlineo on notice as to what conduct could trigger a charge of violating the condition. *Cf. United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003) ("a

9

probationer has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison"). Because the condition does not inform Carlineo what he must do, or for how long, to ensure he will not be re-incarcerated, it fails to provide him with sufficient guidance as to what he must do to avoid a violation proceeding and possible re-incarceration. In pointing out these defects, however, we re-emphasize that conditions of supervised release "need not . . . describe every possible permutation, or spell out every last, self-evident detail." *United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008). But the challenged condition here failed to inform Carlineo of even the broad contours of the prohibited (and required) conduct.

The Guidelines authorize the imposition of special conditions such as substance abuse and mental health treatment. *See* U.S.S.G. § 5D1.3(d). However, these programs must be "approved by the United States Probation Office." U.S.S.G. § 5D1.3(d)(4); U.S.S.G. § 5D1.3(d)(5). In contrast, the Program has not been approved. It has not been evaluated by the Probation Office, and there are no apparent licensing, certification, or objective standards that govern and define the Program. The lack of prior approval and the cursory description of the

10

Program in the Partners' letter together render the challenged special condition unduly vague.

**II.**

We also conclude that the special condition results in the delegation of too much authority to the Probation Office. We have been clear that the district court, not the Probation Office, retains exclusive authority to set conditions of supervised release. In *United States v. Matta*, we held that the district court erred when it imposed a special condition of supervised release that authorized the Probation Office to choose between an in-patient substance abuse treatment program and outpatient treatment program. 777 F.3d at 123. We concluded that because inpatient treatment imposed significantly greater restrictions on a defendant's liberty than outpatient treatment, making the choice between the two is tantamount to allowing the probation officer to decide the extent of the defendant's punishment—authority reserved exclusively for the district court. That rationale applies here.

To be sure, a district court may delegate to the Probation Office decision-making authority over details of supervised release such as a treatment schedule or duration. But it may not delegate decision-making authority which would

11

make a defendant's liberty contingent on a probation officer's exercise of open-ended discretion over a program no one knows much about. *See Matta*, 777 F.3d at 122. In other words, the Probation Office may supervise and execute a sentence but may not fashion a sentence's terms.

With the Program at issue, the ultimate discretion and authority to figure out what the special condition requires is left with the Probation Office. The Program is sufficiently ill-defined so that, in supervising Carlineo, the Probation Office would need to fill in too many blanks. It would be required to come up with some sort of configuration of the sentencing circle, the listening circle, and community service. Because one configuration could well be more onerous or restrictive than another and, as a consequence, impose greater or lesser restrictions on Carlineo's liberty, the Probation Office, and not the district court, would be deciding the extent of Carlineo's punishment. We have been clear that such a result is not appropriate. *See United States v. Degroate*, 940 F.3d 167, 177 (2d Cir. 2019); *United States v. Villafane-Lozada*, 973 F.3d 147, 152–53 (2d Cir. 2020).

## CONCLUSION

For the foregoing reasons, the special condition is **VACATED.**