*United States of America v. Sims*

# In the
# United States Court of Appeals
# for the Second Circuit

---

August Term 2022
Submitted:  January 13, 2023
Decided:  February 5, 2024

No. 21-3015

---

UNITED STATES OF AMERICA,
*Appellee*,
v.
DEWEY K. SIMS,
*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Northern District of New York
No. 21-cr-52, Mae D'Agostino,
District Court Judge.

---

Before:  CALABRESI, PÉREZ, and NATHAN, *Circuit Judges*.

On appeal from a sentencing judgment entered in the United States District Court for the Northern District of New York (D'Agostino, *J*.).

Defendant-Appellant Dewey K. Sims pleaded guilty to possessing a firearm after a prior felony conviction, in violation of 18 U.S.C. § 922(g).  The district court imposed a term of imprisonment followed by a term of supervised release, subject to, as relevant here, a special condition that prohibited Sims from associating with "any member, associate, or prospect of the Jungle Junkies, or any other criminal gang, club, or organization."  Appellant's App'x at 92.  On appeal, Sims challenges

the condition as: (1) lacking support for its imposition from the district court or the record itself; and (2) impermissibly overbroad and vague. We agree that neither the district court's comments during the sentencing hearing nor the record show that it fulfilled the requirements necessary to impose the special condition of supervised release in question. For that reason, we vacate the condition and remand for the limited purpose of permitting the district court to further explain its reasoning or develop the record as needed.

VACATED IN PART AND REMANDED.

---

James P. Egan, Assistant Federal Public Defender, Federal Public Defender's Office, Northern District of New York, Syracuse, NY, *for Defendant-Appellant.*

Emmet O'Hanlon, Assistant United States Attorney *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Albany, NY, *for Appellee.*

---

MYRNA PÉREZ, *Circuit Judge*:

In this appeal, Defendant-Appellant Dewey K. Sims challenges the district court's imposition of a "special condition"[1] of supervised release prohibiting him

---

[1] In this decision, we use the term "special conditions" to refer to the discretionary conditions imposed by sentencing courts that are not specifically required or recommended in 18 U.S.C. § 3583 (concerning the imposition of a term of supervised release after imprisonment) or the United States Sentencing Guidelines (the "Guidelines"). While the Guidelines technically describe a category of "recommended" conditions as "special" because their appropriateness is contingent on whether certain circumstances are present, we consider those recommended conditions to be "as necessary to the administration of supervised release as the standard conditions," which "are presumed suitable in all cases." *United States v. Thomas*, 299 F.3d 150, 153–54 (2d Cir. 2002) (quoting *United States v. Asuncion-Pimental*, 290 F.3d 91, 94 (2d Cir. 2002)); *see also Asuncion-Pimental*, 290 F.3d at 94 ("[T]he suitability of the conditions provided in § 5D1.3(d) may be contingent on the presence of specific factors in each case. Where these factors

2

from "associat[ing] with any member, associate, or prospect" of any "criminal gang, club, or organization." Appellant's App'x ("App'x") at 92.

When imposing a sentence that includes a term of supervised release, sentencing courts are given broad discretion to attach "special conditions," which constrain the defendant's behavior. But the court's authority to impose such conditions is not boundless. One limitation is that the sentencing court's explanation of its decision to impose the special condition must be supported by the record. In this case, the sentencing court's reason for imposing the special condition was neither adequately explained nor supported by the record, and therefore we vacate the condition and remand the case for further proceedings.

**DISCUSSION**

After a criminal defendant is found guilty of an offense, the court must turn to the important task of determining an appropriate sentence. Courts impose terms of supervised release in nearly every federal sentence, despite being required to do so only in certain limited circumstances. *See* U.S. Sent'g Comm'n,

---

are present, however, these 'special' conditions are no different in practical terms from 'standard' conditions, that is, they are generally recommended."). We note that the Guidelines also describe a set of "additional" special conditions, such as conditions requiring a defendant to reside in a community treatment center or be subject to an evening curfew, but those serve as specific examples of conditions that "may be appropriate on a case-by-case basis." U.S.S.G. § 5D1.3(e).

*Federal Offenders Sentenced to Supervised Release* 52 (2010) (finding that from 2005 to 2009, courts imposed terms of supervised release in 99.1% of cases where they were not statutorily mandated, with the terms averaging 35 months); *see also* 18 U.S.C. § 3583(a) (providing that a sentencing court "shall" impose terms of supervised release if "required by statute or if the defendant has been convicted for the first time of a domestic violence crime," but otherwise "may" impose such terms for felonies or misdemeanors).

When a court imposes a term of supervised release, it also determines what conditions or restrictions are appropriate for that defendant. Courts are given broad latitude to design their own "special conditions," so long as the courts, among other things, consider the goals of sentencing, including the need for the sentence to provide adequate deterrence, protect the public, and provide the defendant with needed services. *See* 18 U.S.C. § 3583(c); U.S.S.G. § 5D1.3(b). Sentencing is a heavy task, and courts are asked to carefully balance the goals of supervised release while remaining mindful of the life-altering effects their judgments have on defendants, their families, and their communities.

Here, the district court imposed two conditions of supervised release that limited Sims's ability to associate with certain groups. The first is a standard

4

condition listed under U.S.S.G. § 5D1.3(c), which presumptively applies to all terms of supervised release.  It directs that Sims not "communicate or interact with someone the defendant knows is engaged in criminal activity" and further that "[i]f the defendant knows someone has been convicted of a felony, the defendant shall not knowingly communicate or interact with that person without first getting the permission of the probation officer" (the "Standard Non-Association Condition").  *See* U.S.S.G. § 5D1.3(c)(8); *see also* App'x at 91.

The second condition prohibits Sims from "associat[ing] with any member, associate, or prospect of the Jungle Junkies, or any other criminal gang, club, or organization" (the "Special Non-Association Condition").  App'x at 92.  In this case, we primarily review the court's imposition of the Special Non-Association Condition.

**I.  Factual Background[2]**

This sentencing appeal arises from Sims's guilty plea for possession of a firearm as an individual previously convicted of a felony, in violation of 18 U.S.C. § 922(g).  Sims was stopped by law enforcement for a speeding violation and patted down.  During that interaction, Sims conceded that he had a gun, and the

---

[2] The facts are primarily taken from the Presentence Investigation Report, adopted by the district court as its findings of fact.

officers recovered a semi-automatic pistol from him. Upon running a criminal history check, they discovered that Sims had a prior felony conviction, which meant that he was prohibited from possessing firearms under 18 U.S.C. § 922(g).

**A. The Presentence Report and Parties' Submissions**

Sims entered a guilty plea, and the United States Probation Office prepared a Presentence Investigation Report ("PSR") for sentencing. As relevant here, the PSR noted that the National Crime Information Center ("NCIC") records identified Sims as a member of the Jungle Junkies criminal gang, which Sims has consistently denied. Sims's criminal history does not contain any charges or convictions of gang-related activity. The PSR noted that thirty-one Jungle Junkies gang members were charged and convicted in a separate Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy, but that Sims was not one of those individuals.

The PSR also mentioned Sims's tattoos—including a sleeve displaying the names of Sims's friends who passed away during his childhood—and that reports in the RICO conspiracy case had identified some of those individuals as Jungle Junkies members. During his presentencing interview, Sims informed the Probation Office that he had grown up with the individuals on his sleeve but

contended that he "was friends with them long before they were ever charged" as Jungle Junkies in the RICO case.

The Probation Office recommended a sentence that included a term of supervised release and three special conditions, including the Special Non-Association Condition. In his sentencing submission to the court, Sims objected to the proposed Special Non-Association Condition and the portions of the report describing him as having any gang affiliation. Sims further argued that the Standard Non-Association Condition, prohibiting him from communicating or interacting with individuals involved in criminal conduct or with known felons, would achieve the same sentencing goals as the recommended Special Non-Association Condition. Therefore, Sims contended that the proposed Special Non-Association Condition was more restrictive than necessary.

**B. The Sentencing Hearing**

At the beginning of the sentencing hearing, the district court adopted the factual information in the PSR, without explanation or specifically addressing Sims's objections. After doing so, it asked whether Sims had any ongoing objections to the facts in the PSR, to which Sims's attorney responded: "No, your

Honor. Just the objections noted in the sentencing memo concerning the recommended conditions of supervision . . . ." App'x at 70.

When it was time for Sims to be heard, his attorney argued that: (1) the Special Non-Association Condition was unrelated to the factors under 18 U.S.C. § 3553(a), as the offense conduct did not show that Sims was connected to any gang members; (2) any loose connection to former gang members described in the PSR only established that, while Sims had grown up and was friendly with those individuals, he was never a member of a gang nor ever charged with a gang-related crime; and (3) the condition would be overly restrictive. Sims's counsel reiterated that many of the people appearing on Sims's tattoos were deceased, and that the Standard Non-Association Condition would "more than be suitable" for the purposes of sentencing. App'x at 74. In addition, Sims requested that the court recommend placement at a Bureau of Prisons facility near family in Pennsylvania so that he could "try and start over and start fresh." *Id.* at 75.

The court sentenced Sims to 33 months' imprisonment to be followed by three years of supervised release. The court granted Sims's placement request and recommended that he be placed in a facility as close to Pennsylvania as possible.

8

As to the term of supervised release, the court imposed fifteen "standard" conditions,[3] one of which was the Standard Non-Association Condition, and the special conditions recommended by the Probation Office in the PSR, including the Special Non-Association Condition that is at issue.

The court turned to a discussion of the special conditions, stating that it found them:

> necessary and justified based upon the nature of the instant offense as well as your history and characteristics as the defendant as outlined in detail in the presentence report and to promote rehabilitation of the defendant.
>
> It is noted that the special conditions were previously disclosed to the parties and are included in the presentence report. And this afternoon I have heard arguments both for the special conditions and against the special conditions.
>
> . . . .
>
> As far as the condition that the defendant not associate with any gang members, I know what I know from reading the presentence investigation report, which does indicate, according to the National Crime Information Center, that this defendant has had some gang affiliation.

---

[3] During sentencing, the district court stated that it was imposing fifteen "standard" conditions. We note that U.S.S.G. § 5D1.3(c) lists thirteen standard conditions. Upon review, it appears that two of the "standard" conditions imposed by the district court fell under the set of conditions provided under U.S.S.G. § 5D1.3(d), which "are recommended in the circumstances described and, in addition, may otherwise be appropriate in particular cases." U.S.S.G. § 5D1.3(d).

You know, if most of the gang members have passed away or if indeed it's true that Mr. Sims was not associated with the gang, this will be an easy condition for him to follow, I would think. But, again, I'm going to err on the side of caution because I think it will promote his rehabilitation if indeed he has participated in gang activity . . . .

App'x at 81–82. This timely appeal followed.

## II. Analysis

On appeal, Sims challenges the Special Non-Association Condition on two grounds: (1) the record fails to indicate that the condition is reasonably related to the purposes of supervised release and constitutes a greater infringement on Sims's liberty than is necessary; and (2) the condition was impermissibly vague. We vacate and remand the Special Non-Association Condition based on the first argument. Accordingly, we need not reach the second.

### A. Standard of Review

We review special conditions of supervised release for both procedural and substantive reasonableness. *United States v. Eaglin*, 913 F.3d 88, 94 (2d Cir. 2019). Sims challenges the procedural reasonableness of his sentence, and because he preserved his objection in the district court, we review for abuse of discretion. *See United States v. Betts*, 886 F.3d 198, 201 (2d Cir. 2018).

As with our review of other aspects of a sentence, "[t]he procedural inquiry looks to whether the sentencing judge has properly accounted for the factors that constrain its sentencing discretion; substantive reasonableness examines whether, after accounting for those constraints, the district court's exercise of its discretion can be 'located within the range of permissible decisions.'" *United States v. Kunz*, 68 F.4th 748, 759 (2d Cir. 2023) (quoting *United States v. Matta*, 777 F.3d 116, 124 (2d. Cir. 2015)).

**B. Applicable Law**

When deciding whether a term of supervised release is appropriate—and if so, the length of the term and the conditions that should apply—the court is directed to consider certain factors listed in 18 U.S.C. § 3553(a). Those factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need . . . to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3583(c) (directing courts to consider some, but not all, of the § 3553(a) factors when imposing terms of

supervised release).  As part of that assessment, the Sentencing Guidelines specifically advise courts to consider the defendant's criminal history and any abuse of controlled substances or alcohol, and it notes that a term of supervised release is recommended in such cases.  *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.1 cmt. 3.

If the court decides a term of supervised release is appropriate, it must also determine what conditions should apply.  18 U.S.C. § 3583(c); *United States v. Truscello*, 168 F.3d 61, 62 (2d Cir. 1999) ("Implicit in the very nature of supervised release is that certain conditions are necessary to effect its purpose.").  The court is given "wide latitude" to impose "special conditions," or any conditions it deems appropriate. *United States v. MacMillen*, 544 F.3d 71, 74 (2d Cir. 2008).  While courts have considerable discretion to impose special conditions as they see fit, that discretion is not unlimited.  The limits, shaped in large part by 18 U.S.C. § 3583(d) and the Sentencing Guidelines, U.S.S.G. § 5D1.3(b), are vital for safeguarding the rights of criminal defendants and have been explained to varying degrees by our precedent.

We highlight in greater detail below certain of the requirements a court must satisfy when imposing special conditions of supervised release.

**1. The court must conduct an individualized assessment and find that the special condition is reasonably related to the sentencing factors.**

Our precedent makes clear that for the imposition of special conditions of supervised release to be procedurally reasonable, "a District Court must 'make an individualized assessment when determining whether to impose a special condition of supervised release, and . . . state on the record the reason for imposing it,'" and "[a]ny explanation provided by the District Court must be adequately supported by the record." *Eaglin*, 913 F.3d at 94 (quoting *Betts*, 886 F.3d at 202).

In other words, the court is required to make findings specific to the defendant, connecting those findings to the applicable § 3553(a) factors that would justify including the special condition in this case.[4] *See United States v. Salazar*, No. 22-1385-cr, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) (vacating judgment where district court "did not make individualized findings about the nexus

---

[4] The need for an individualized assessment may be particularly useful for certain cases involving non-association conditions, given that commentators have expressed concerns with the structural limitations on databases that track gang membership, citing the lack of transparency as to how they are maintained, the lasting effects of misclassification, particularly on communities of color, and the lack of opportunity to challenge misclassification. *See generally* K. Babe Howell, *Fear Itself: The Impact of Allegations of Gang Affiliation on Pre-Trial Detention*, 23 St. Thomas L. Rev. 620 (2011). Some studies indicate that databases may be overinclusive because the criteria for being added to the database may target entirely innocuous behavior. *Id.*; *see also* Beth Caldwell, *Criminalizing Day-to-Day Life: A Socio-Legal Critique of Gang Injunctions*, 37 Am. J. Crim. L. 241 (2010).

between the breadth of the condition, on the one hand, and [the defendant's] characteristics and offense conduct, on the other"); *United States v. Barden*, No. 22-492, 2023 WL 3487771, at *2 (2d Cir. May 17, 2023) ("[T]he district court was . . . required to assess [the defendant]'s individual circumstances and to explain its reasons for imposing [a special condition] . . . ."); *United States v. Corsey*, 723 F.3d 366, 377 (2d Cir. 2013) (per curiam), *as corrected* (July 24, 2013) (requiring the court to make individualized determinations for co-defendants and directing it to "come to an independent determination of the appropriate punishment for each defendant" on the record); *United States v. Bell*, 915 F.3d 574, 577–78 (8th Cir. 2019) (finding that court abused its discretion in imposing special conditions based on its "general experience with prior offenders" and without conducting individualized inquiry); *United States v. Azcona-Polanco*, 865 F.3d 148, 153 (3d Cir. 2017) ("[A] district court must 'explain and justify' the imposition of supervised release . . . ." (quoting *United States v. Murray*, 692 F.3d 273, 281 (3d Cir. 2012))).

"There must be a reasonable relationship between the factors considered by the district court in the individualized assessment and the special condition of release being challenged." *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020) (citation omitted); *see* 18 U.S.C. § 3583(d)(1) (listing § 3553(a) factors for

14

consideration); *see also* 18 U.S.C. § 3583(c) (same); U.S.S.G. § 5D1.3(b)(1) (same). A special condition need not reasonably relate specifically to any particular § 3553(a) factor, including the offense conduct, so long as there is a sufficient relationship between the special condition and at least one of the other factors. *See United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013).

### 2. The court must explain its reasoning, which must be supported by the record.

The court's individualized assessment, and its explanation for imposing the special condition following that assessment, "must be adequately supported by the record." *Eaglin*, 913 F.3d at 94. If the court fails to provide an explanation, we may uphold the special condition only if the court's reasoning is "self-evident in the record." *Betts*, 886 F.3d at 202 (quoting *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004)).[5]

---

[5] Some articles suggest that providing defendants with an explanation of their sentence may be particularly important with regard to special conditions of supervised release, which can have a significant impact on day-to-day life. As commentators have discussed in connection with non-association conditions and gang injunctions specifically, such restrictions may leave releasees isolated from their communities at a time when they most need support or make it difficult for the releasee to avoid violating supervised release and returning to prison, thereby increasing recidivism and stalling rehabilitation and reintegration. *See generally* James M. Binnall, *Divided We Fall: Parole Supervision Conditions Prohibiting "Inter-Offender" Associations*, 22 U. Pa. J.L. & Soc. Change 25 (2019) (discussing pro-social benefits of inter-offender associations).

**3. The condition must not impose a greater deprivation of liberty than reasonably necessary to accomplish sentencing objectives.**

The court must also consider how a special condition will impact any cognizable liberty interests in light of any sentencing objectives. 18 U.S.C. § 3583(d)(2). Courts must first identify the cognizable liberty interest affected, then "consider the sentencing goal to which the condition relates, and whether the record establishes its reasonableness." *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005). Courts "must then consider whether [the condition] represents a greater deprivation of liberty than is necessary to achieve that goal," or whether "the deprivation is narrowly tailored to serve a compelling government interest." *Id.* The imposition of a special condition affecting a cognizable liberty interest must be "supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." *Matta*, 777 F.3d at 123 (quoting *United States v. Mike*, 632 F.3d 686, 695–96 (10th Cir. 2011)).

**4. The condition must be consistent with any pertinent policy statements issued by the Sentencing Commission.**

In addition, courts are required to consider the Sentencing Commission's policy statements on, among other things, the appropriate use of conditions of

16

supervised release. 18 U.S.C. § 3583(d)(3); *see also* 28 U.S.C. § 994(a)(2)(B). The policy statements are set forth in U.S.S.G. § 5D1.3 and include the Sentencing Commission's recommendations on certain conditions, such as the standard conditions, and when they should be imposed.

**5. The court must orally pronounce the condition in open court.**

Under Federal Rule of Criminal Procedure 43(a)(3), "the defendant must be present at . . . sentencing." With regard to the imposition of terms of supervised release, we have interpreted Rule 43(a)(3) to require that the sentencing court orally pronounce special conditions in open court, and when there is a conflict between the court's unambiguous oral pronouncement of a special condition and the written judgment, the oral pronouncement controls. *See Thomas*, 299 F.3d at 152–53.

**6. The condition must be sufficiently clear.**

"[A] defendant has a due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct is prohibited so that he may act accordingly." *United States v. Carlineo*, 998 F.3d 533, 536 (2d Cir. 2021). The condition must give the defendant "notice as to what conduct could trigger a charge of violating the condition," including "what he must do, [and] for how

long, to ensure he will not be re-incarcerated." *Id.* at 537 (citation omitted).[6] "A condition is too vague if it requires a reasonable person to speculate as to its meaning." *Id.* at 536 (citation omitted). However, "[c]onditions need not be cast in letters six feet high, or describe every possible permutation, or spell out every last, self-evident detail." *United States v. Reeves*, 591 F.3d 77, 81 (2d Cir. 2010) (ellipses omitted) (quoting *Johnson*, 446 F.3d at 280).

---

[6] Although we need not reach Sims's arguments as to this point, we note that prior panels have rejected vagueness and overbreadth challenges to non-association conditions like the one here. We previously have assumed a mens rea requirement and "constitutionally required limitations on the breadth of 'association,'" such "that the prohibition only limits association with [criminal enterprise members] *known to*" the defendant. *United States v. Green*, 618 F.3d 120, 123 (2d Cir. 2010) (citation omitted); *see also United States v. Floyd*, 840 F. App'x 625, 628 (2d Cir. 2021) (rejecting overbreadth challenge to non-association condition on the assumption that "the condition only limits [defendant's] association with gang members known to him and excludes 'incidental contacts'"). "Generally, supervised release provisions are read to exclude inadvertent violations." *United States v. Johnson*, 446 F.3d 272, 281 (2d Cir. 2006).

**7. The condition must not result in the court exceeding its ability to delegate decision-making authority to Probation.**

While a district court may delegate to the Probation Office decision-making authority over the details of supervised release, it may not delegate the authority to make choices as to the extent of a special condition because such delegation makes "a defendant's liberty contingent on a probation officer's exercise of open-ended discretion." *Carlineo*, 998 F.3d at 538. "In other words, the Probation Office may supervise and execute a sentence but may not fashion a sentence's terms." *Id.*

**C. Application**

We focus our discussion on the requirement that the court must conduct an individualized assessment as to whether the special condition is reasonably related to the applicable § 3553(a) sentencing factors and must state on the record the reason for imposing it. *See Betts*, 886 F.3d at 202. Of course, when the court's explanation for imposing the special condition is lacking, we may uphold it only if the court's reasoning is "self-evident" from the record. *Id.* This guiding principle assumes heightened import in situations such as the one we have here, where the condition being imposed impacts the defendant's liberty interest significantly.

19

The special condition central to this case falls within a particular subcategory of non-mandatory conditions of supervised release which we refer to as "non-association" conditions. Non-association conditions order the defendant to "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons." 18 U.S.C. § 3563(b)(6); *see* 18 U.S.C. § 3583(d) (authorizing sentencing court to impose discretionary conditions of probation listed under 18 U.S.C. § 3563(b) as conditions of supervised release, so long as the conditions: are reasonably related to the factors listed under § 3553(a)(1), (a)(2)(B)–(D); involve no greater deprivation of liberty than is reasonably necessary for the purposes listed under § 3553(a)(2)(B)–(D); and are "consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)").

During the sentencing hearing, the court stated that it was imposing all three of the special conditions suggested by the Probation Office based on Sims's offense, his history and characteristics as described in the PSR, and the promotion of rehabilitation. And as mentioned previously, one such special condition was a non-association condition—the Special Non-Association Condition. Acknowledging that the Special Non-Association Condition need only be related

20

to one of the sentencing factors, *see McLaurin*, 731 F.3d at 262, we review each of these factors below.

### 1. The Nature and Circumstances of the Offense

First, turning to the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1), the court's reliance on this factor to justify the Special Non-Association Condition is not supported by the record. Nothing in the record indicates that the offense was in any way related to the Jungle Junkies or any other gang, or that any association with a gang contributed to Sims's prior criminal behavior.

In that way, this case is unlike many of our other non-association cases, where the record established that the prohibited association had some relationship to the crime of conviction. *See, e.g., United States v. Bolin*, 976 F.3d 202, 210–13 (2d Cir. 2020) (collecting cases).

For example, in *Bolin*, the defendant pled guilty to making false statements to the FBI Joint Terrorism Task Force during an investigation into threatening content that he had posted on social media. *Id.* at 211–13. The defendant's social media posts had explicitly endorsed white supremacist violence against Jews, Muslims, and African Americans. *Id.* Thus, as a condition of supervised release,

21

the defendant was prohibited from participating in certain internet communities that promoted violence or crime or that were maintained by any groups espousing those ideas. *Id.* In upholding the special condition, we explained that "[t]he connection between the hate speech which led to the crime and the crime itself was . . . substantial" and that the "interests of rehabilitation and public safety would be served by 'separating' Bolin from racist, anti-Semitic, anti-Muslim, and other threatening communications." *Id.* at 212–13.

Likewise, in a non-precedential case, *United States v. Rakhmatov*, we upheld a special condition that prohibited the defendant from associating with or accessing websites affiliated with criminal or terrorist organizations, explaining that its purpose was "self-evident," given the underlying offense of providing material support to a foreign terrorist organization. Nos. 21-151(L), 21-167(Con), 2022 WL 16984536, at *3 (2d Cir. Nov. 17, 2022) (citing *Betts*, 886 F.3d at 202); *see also United States v. Schiff*, 876 F.2d 272, 276 (2d Cir. 1989) ("It is not an abuse of discretion for a district court to require that a person convicted of attempted tax evasion not associate with people who encourage tax evasion. We have upheld probation conditions that restrict a person's liberty before, when, as here, those conditions bear a reasonable relation to the crime of which the defendant stands

22

convicted."). In this case, however, there is no nexus between the underlying offense and the Special Non-Association Condition.

## 2. The History and Characteristics of the Defendant

Next, turning to Sims's history and characteristics, 18 U.S.C. § 3553(a)(1), we find the district court's comments during the sentencing hearing justifying the Special Non-Association Condition to be similarly unsupported by the record.

Sims has never been charged with or convicted of a crime related to, or on behalf of, the Jungle Junkies or any other gang, gang member, or associate. Though the district court referred to Sims's presence in the NCIC database, it noted it was imposing the Special Non-Association Condition, even "if most of the gang members have passed away or if indeed it's true that Mr. Sims was not associated with the gang." App'x at 82. It justified imposing the Special Non-Association Condition in any event by explaining that it "will be an easy condition" for Sims to follow. *Id.* But that explanation casts doubt on whether the Special Non-Association Condition should be imposed in this case. As we have discussed, we may only uphold a special condition unexplained by the district court if the court's justification for imposing the condition is "self-evident in the record." *Betts*, 886 F.3d at 202. If Sims indeed had no association to a gang, as he

23

contends and as posited by the district court, it is neither apparent nor self-evident how his history and characteristics would be reasonably related enough to support imposing the Special Non-Association Condition.

The reasonableness of the Special Non-Association Condition in connection with Sims's particular history and characteristics is even less clear given that Sims had already requested (and the court granted) placement out of state, well away from any members of the Jungle Junkies with whom he might be acquainted. Further, the court imposed, and Sims had no objection to, the Standard Non-Association Condition, which prohibited Sims from communicating or interacting with individuals engaged in criminal activity or with known felons. Nonetheless, the court did not acknowledge Sims's argument that the Standard Non-Association Condition would achieve the same effect.

Of course, there will be times when a sentencing court's decision to impose both the Standard Non-Association Condition and a condition like the Special Non-Association Condition here is appropriate, given a defendant's history and characteristics. In this case, however, it was not. Most notably, we have often upheld the imposition of both conditions when the defendant admitted and/or did not contest his relationship to the prohibited group.

Three recent non-precedential decisions where we upheld a special condition similar to the one at issue here illustrate how critical the defendant's history and circumstances are to assessing the appropriateness of the special condition. For example, in *United States v. Floyd*, we upheld a special condition prohibiting the defendant from frequenting any place where criminal gangs may meet pursuant to a non-exclusive prohibition list provided by the probation department. *See* 840 F. App'x at 628, *aff'g* No. 15-CR-0287-12(WFK), 2018 WL 3918166, at *3 (E.D.N.Y. Aug. 14, 2018). In that case, the district court relied on, among other things, the undisputed fact of the defendant's history of being affiliated with multiple gangs. 2018 WL 3918166, at *3. In *LoFranco v. United States Parole Commission*, we affirmed a condition prohibiting the defendant from associating with chapters of the Hell's Angels Motorcycle Club, of which he and his co-conspirators were members and in which he held a high-ranking leadership position. 175 F.3d 1008 (2d Cir. 1999) (unpublished), *aff'g* 986 F. Supp. 796, 804–08 (S.D.N.Y. 1997).

In *United States v. Marshall*, we upheld a special condition identical to the one imposed on Sims. 808 F. App'x 11, 14 (2d Cir. 2020). But in that case, the defendant admitted gang membership in an interview with the FBI, then later

25

denied it. *Id.* Thus, in that context, we cited with approval the Ninth Circuit's view that "[a] condition barring contact with an organization may be substantively reasonable even if the defendant denies membership." *Id.* (alteration in original) (quoting *United States v. Evans*, 883 F.3d 1154, 1161 (9th Cir. 2018)).

In this case, however, Sims has consistently denied any affiliation with the Jungle Junkies or any other criminal gang, and the PSR provides nothing but a conclusory statement classifying him as a gang member. In fact, Sims's affiliation with the Jungle Junkies was so unestablished that even the district court acknowledged that Sims may not have been affiliated with the Jungle Junkies at all. Given the doubt surrounding Sims's affiliation with the Jungle Junkies, clarification from the district court as to why the condition is warranted in this particular case is necessary.

### 3. The Need for the Sentence to Deter Criminal Conduct, Protect the Public, and Provide the Defendant with Rehabilitative Treatment

Turning to the sentencing goals listed under § 3553(a)(2), the court stated that it was erring on the side of caution by imposing the Special Non-Association Condition to promote Sims's rehabilitation. As an initial matter, we have suggested that the mere reference to a sentencing goal may not be sufficient to

justify imposing the special condition. *See Eaglin*, 913 F.3d at 95 ("The District Court's general reference to the conditions as being necessary to protect the community does not suffice, even on the background of [the defendant's] repeated infractions of [prior] terms of supervised release.").

Further, the court provided little explanation for why imposition of the Special Non-Association Condition was reasonably related to the goal of rehabilitation in this case. The record says nothing about a history of gang-related crimes, nor does it suggest a likelihood that Sims would commit gang-related crimes in the future, and the court acknowledged that Sims may indeed have no association to any gangs or living gang members.

If the goal is to, as a general matter, deter criminal conduct and prevent recidivism by prohibiting interactions with those involved in criminal behavior, the same is true of every case. Indeed, that goal is addressed and furthered by a Standard Non-Association Condition, which is usually already included in a defendant's term of supervised release. *See Betts*, 886 F.3d at 203 (vacating a special condition prohibiting all alcohol use and noting, among other things, that "[g]iven the factual record below," the standard condition prohibiting "excessive use" was "sufficient to further the objectives of sentencing"); *see also United States v. Reed*,

27

421 F. App'x 113, 116 (2d Cir. 2011) (vacating special condition and remanding, with the direction that "[i]n determining whether special conditions are indeed necessary, we specifically direct the court to consider whether 'standard' condition U.S.S.G. § 5D1.3(c)(7), also imposed by the court's judgment, adequately addresses the court's alcohol and substance abuse concerns given the record in this case").

**III.    Conclusion**

There may be good reasons for imposing the Special Non-Association Condition.  But because we have determined that the reasonableness of imposing the Special Non-Association Condition is not self-evident from this record as it stands, vacating the Special Non-Association Condition and remanding is appropriate so that the district court may provide the necessary justification or further develop the record to support the imposition of the special condition.[7]

We have considered all of the parties' remaining arguments on appeal and have found them to be without merit.  The judgment of the district court is **VACATED IN PART** with respect to the Special Non-Association Condition, and the case is **REMANDED** for further proceedings consistent with this opinion.

---

[7] Because we vacate the Special Non-Association Condition on this basis, we do not discuss whether the court's imposition of the special condition was otherwise sufficient.

28