# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 5, 2025

Lyle W. Cayce
Clerk

No. 23-30721

United States of America,

*Plaintiff—Appellee*,

*versus*

Luis Alfredo Lezama-Ramirez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CR-182-1

ON PETITION FOR REHEARING EN BANC

Before Southwick, Oldham, and Ramirez, *Circuit Judges*.

Per Curiam:

Treating the petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is GRANTED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on rehearing en banc (Fed. R. App. and 5th Cir. R. 35), the petition for rehearing en banc is DENIED. We withdraw our prior opinion, *see United States v. Lezama-Ramirez*, 155 F.4th 348 (5th Cir. 2025) (per curiam), and substitute the following.

No. 23-30721

Luis Alfredo Lezama-Ramirez, a previously removed alien, pleaded guilty to unlawful reentry under 8 U.S.C. § 1326(a). The district court sentenced him to 24 months in prison and one year of supervised release. He challenges various discrepancies between the supervised-release conditions imposed at sentencing and those listed in the district court's written judgment. We AFFIRM in part and VACATE in part.

I

After Lezama-Ramirez pleaded guilty, the Probation Office prepared a presentence report ("PSR") and sent it to his counsel. The PSR included a list of thirteen "Standard Conditions" and two "Special Conditions" of supervised release.

At sentencing, Lezama-Ramirez's counsel confirmed that he had no objections to the PSR. And counsel referred to the PSR several times during the sentencing hearing. Without objection, the district court adopted the PSR.

The district court then imposed a one-year term of supervised release and ordered Lezama-Ramirez to comply with various supervised-release conditions. The district court did not read those conditions out loud, however. Rather, as relevant here, the district court ordered Lezama-Ramirez to "comply with all other standard conditions of supervised release" and two special conditions. Then the district court's written judgment included thirteen standard conditions and two special conditions. The standard and special conditions listed in the written judgment were identical to the conditions disclosed in the PSR.

II

We first address Lezama-Ramirez's challenge to Standard Conditions 2–9, Standard Conditions 11–13, and Special Condition 1. These conditions

were listed in the written judgment and the PSR. But the district court did not read them out loud at sentencing. Because Lezama-Ramirez had notice of the supervised-release conditions in the PSR, and because he failed to object at sentencing when the district court imposed them, our review is for plain error. *United States v. Diggles*, 957 F.3d 551, 563 (5th Cir. 2020) (en banc).

We have repeatedly held that a district court need not read out loud the conditions of supervised release when those conditions are disclosed in the PSR. *See, e.g.*, *United States v. Grogan*, 977 F.3d 348, 352 (5th Cir. 2020); *United States v. Molina-Alonso*, 834 F. App'x 80, 82 (5th Cir. 2020) (per curiam); *accord Diggles*, 957 F.3d at 561. And "[w]e have declined to interpret Rule 32 as creating an absolute requirement that the district court 'specifically . . . ask a defendant whether he has read the [PSR].'" *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001) (quoting *United States v. Victoria*, 877 F.3d 338, 340 (5th Cir. 1989)). "Instead, we 'draw reasonable inferences from court documents, the defendant's statements, and counsel's statements' to determine whether the defendant has been given an opportunity to read the PSR with his counsel[,]" *see id.*, sufficient to understand that the conditions imposed at sentencing are the ones that were disclosed in the PSR.

The district court did not err, much less did it plainly err. The record reflects the probation officer's certification in the Addendum to the PSR that the PSR had been disclosed to the defendant and his counsel. The district court confirmed at the beginning of the hearing that there were no objections to the PSR and adopted it. It is clear from the record that the federal public defender ("FPD") representing Lezama-Ramirez was intimately familiar with the PSR. The FPD even corrected the district court's erroneous statement about Lezama-Ramirez's criminal history category by identifying the PSR page number that included the correct information. Moreover,

during his allocution, Lezama-Ramirez himself told the district court that he had complied with "with everything that I've been asked to do," that neither probation nor his attorney had any complaints about him, and that he "would also comply with all the requisites or the requirements that the Court ask[s] of me." He referenced witnesses who were present and prepared to speak on his behalf, and the FPD also proffered additional documents on Lezama-Ramirez's behalf. At no point during the sentencing did Lezama-Ramirez express that he had not reviewed the PSR with his counsel. The document was the centerpiece of sentencing. *But see United States v. Duruisseau*, No. 20-30649, 2021 WL 5778463, at *3 (5th Cir. Dec. 6, 2021) (finding, based on similar facts, the defendant's claim that he did not review the PSR with counsel prior to sentencing "disingenuous at best" but assuming for purposes of its analysis that the district court plainly erred under *Diggles* in failing to specifically verify that the defendant had reviewed the PSR with counsel prior to sentencing).

Thus, Lezama-Ramirez has not shown reversible error.

## III

We now turn to Lezama-Ramirez's objections to Special Condition 2 and Standard Condition 10. Both conditions appeared in identical form in the PSR and the court's written judgment. But in its oral pronouncement at sentencing, the district court varied in its description of the conditions. Because Lezama-Ramirez could not have known about (and hence could not have objected to) this variance until he saw the written judgment after sentencing, our review is for abuse of discretion. *United States v. Pelayo-Zamarripa*, 81 F.4th 456, 459 (5th Cir. 2023) (quotation omitted).

Not all discrepancies between oral and written conditions "arise to the level of an actual conflict." *Id.* at 459–60. Rather, "we ask whether the written judgment broadens the restrictions or requirements of supervised

No. 23-30721

release, or imposes a more burdensome requirement than that of the oral pronouncement." *Id.* at 460 (citation modified). But where the "discrepancy between the two merely reflects an ambiguity," we "examin[e] the entire record" to determine the sentencing court's intent. *United States v. Tanner*, 984 F.3d 454, 456 (5th Cir. 2021).

Special Condition 2, as orally pronounced, stated that "if [Lezama-Ramirez] is deported," he cannot "re-enter the United States without the written permission of the Secretary of Homeland Security." The written judgment, by contrast, added that if Lezama-Ramirez re-enters the United States, he must "report to the nearest United States Probation Office within 72 hours." As the Government concedes, the reporting requirement imposes an additional burden. *See United States v. Riojas-Flores*, 834 F. App'x 120 (5th Cir. 2021) (per curiam). So we must vacate this condition and remand so the district court can conform it to the oral pronouncement.

Standard Condition 10, as orally pronounced, states that Lezama-Ramirez "[s]hall be prohibited from possessing a firearm, ammunition, destructive device, or any other dangerous weapon." But the written judgment states he "must not own, possess, or have access to" those things. The difference between these two conditions is best described as an ambiguity rather than a conflict. The written judgment "defines [the] scope" of the orally pronounced condition despite its "different terms." *United States v. Thomas*, 830 F. App'x 420, 423–24 (5th Cir. 2020) (per curiam). The district court therefore did not abuse its discretion in imposing this condition.

\*     \*     \*

We VACATE the district court's imposition of Special Condition 2, and we REMAND so the district court can conform it to the condition orally pronounced at sentencing. We otherwise AFFIRM.

No. 23-30721

Andrew S. Oldham, *Circuit Judge*, concurring:

A few months ago, I gave a lecture about horizontal stare decisis generally and our rule of orderliness specifically. *See* Andrew S. Oldham, *Precedent as a Scatterplot*, Joseph Story Distinguished Lecture (Oct. 22, 2025). I explained our rule of orderliness this way:

> [It] requires us to take as gospel every jot, tittle, and footnote in every published opinion and then religiously apply them as if Moses brought them down from Mount Sinai[.] Panels make legal rules like Congress makes statutes—that's why we publish both of them in leather-bound books! And that's why we call our opinions "case-*law*"!

*Ibid.* In my view, this conception of the rule of orderliness cannot be squared with centuries of judicial history, with the judicial power to *find* law, or with the judicial disability to *make* law. *Ibid.*

Hold on, you might say. Surely that conception of the rule of orderliness is a strawman; no one *really* thinks that horizontal stare decisis in the Fifth Circuit *really* requires judges to parse and apply their own work as if they were conducting a textual exegesis at Bible study or parsing conjunctions in congressional enactments. *Cf. Pulsifer v. United States*, 601 U.S. 124 (2024) (divided Court resolving division in appellate courts over meaning of the word "and" in 18 U.S.C. § 3553(f)(1)).

Well, allow me to retort. Our holding in this case was utterly unremarkable. We rejected on plain-error review an alien's challenge to a supervised-release condition that was disclosed in the PSR but not *re*-disclosed in an oral pronouncement at sentencing. *See United States v. Lezama-Ramirez*, 155 F.4th 348 (5th Cir. 2025) (per curiam). We have done this before. *See id.* at 351 (citing *United States v. Grogan*, 977 F.3d 348, 352 (5th Cir. 2020); *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001); *United States v. Duruisseau*, No. 20-30649, 2021 WL 5778463, at

No. 23-30721

*3 (5th Cir. Dec. 6, 2021); *United States v. Molina-Alonso*, 834 F. App'x 80, 82 (5th Cir. 2020) (per curiam)); *see also United States v. Martinez-Rivera*, No. 24-20031, 2025 WL 985711, at *2 (5th Cir. Apr. 2, 2025) (per curiam) (doing the same thing). *And* we have done this since. *See United States v. Villafana-Mondragon*, 170 F.4th 360, 364–65 (5th Cir. 2026) (again doing the same thing). We wrote a short, three-page per curiam opinion to explain that a condition disclosed once need not be disclosed twice. *See Lezama-Ramirez*, 155 F.4th at 351–53. And we explained that rule in one sentence: "The district court need not confirm that the defendant read the PSR; rather, we draw reasonable inferences from the record to determine whether the defendant understood that the conditions imposed at sentencing are the ones that were disclosed in the PSR." *Id.* at 351.

That one sentence is apparently the stuff of such monumental import that it required a six-month rehearing period. *See* Fed. R. App. P. 40(b)(2) (listing criteria for rehearing). The mandate was held on September 29, 2025. And today, after much deliberation, we have revised the opinion to replace "need not confirm" whether the defendant read the PSR with "decline . . . to specifically ask" whether the defendant read the PSR. *Ante*, at 3 (citation modified). And that apparently did not obviate the need for another dissenting opinion, replete with objections over the "caselaw" that we purportedly made in *United States v. Diggles*, 957 F.3d 551 (5th Cir. 2020) (en banc). *See post*, at 10 (Southwick, J., dissenting); *see also ibid.* (referring to our decisions as "first principles"); *id.* at 13 (referring to our decisions as "the law").

No. 23-30721

So for those who doubt whether our rule of orderliness is premised on the idea that panels *make* law that binds just like statutes do, I respectfully submit this case as Exhibit A.[*]

---

[*] My objection to all of this is not that "[f]ollowing precedent is difficult at times." *Post*, at 13 (SOUTHWICK, J., dissenting). On the strong form of the rule of orderliness—where the judge's job is to slavishly follow every jot and tittle of a published precedent as if they were statutes passed by Congress—following precedent is quite easy. Nor is the problem that "[f]irst principles can prove difficult to maintain for long." *Id.* at 10. Rather, my objection is to the idea that words written by judges in their opinions—particularly words written by inferior court judges in 2020—are the source of "first principles."

No. 23-30721

Leslie H. Southwick, *Circuit Judge*, dissenting:

Luis Alfredo Lezama-Ramirez pled guilty to a single count of unlawful reentry into the United States. The district court imposed a sentence of two years of imprisonment and one year of supervised release. At sentencing, Lezama-Ramirez had a Fifth Amendment right to be told the conditions of supervised release being imposed upon him, the violation of which would be punishable by further criminal penalties. A defendant's being told allows him, through counsel, to object on a matter of law, clarify a question of fact, and know that those conditions had been properly imposed by an orderly system of justice. I find a failure to perform that task and would strike the untold conditions of supervision.

To be clear, I recognize there is no need for a "robotic" recitation of the often-lengthy list of conditions in open court. In a unanimous *en banc* opinion, perceptive in its understanding of the dynamics of sentencing, this court held that a district court may adopt a written list of conditions at sentencing if the district court will "ensure" the "defendant had an opportunity to review it with counsel." *United States v. Diggles*, 957 F.3d 551, 561 n.5 (5th Cir. 2020) (*en banc*). Thus, inferences of knowledge are allowed once the foundation for those inferences is laid. That foundation is that the counsel and defendant have discussed the document that includes the conditions. By not insisting on that, we are straying from *Diggles* with increasing frequency.

In this case, the district court did not ensure there was such a review. Lezama-Ramirez was never asked if he had seen, much less reviewed, the list of conditions adopted at the hearing. The majority holds that Lezama-Ramirez's procedural challenge to the lack of notice and opportunity to object at his sentencing is forfeited and must be reviewed for plain error — in effect, he erroneously did not object to the inability to object. This, too, I

9

think is incorrect. Plain error can apply only after the foundation of pronouncement is laid.

Six years ago, this court sought to "reconcile" our admittedly "confusing" caselaw on oral pronouncement. *Diggles*, 957 F.3d at 556–57. We "return[ed] to first principles." *Id.* at 557. First principles can prove difficult to maintain for long. The right to pronouncement of supervisory release conditions is rooted in the Due Process Clause of the Fifth Amendment and a defendant's right "to mount a defense." *Id.* at 557, 560. This court clarified that due process is satisfied at a sentencing hearing when "a district judge enables that defense by giving the defendant notice of the sentence and an opportunity to object." *Id.* at 560. Our forfeiture caselaw, too, was "remoored" to the opportunity to object. *Id.* In other words, the opportunity to object was the anchor for both the due process and forfeiture analysis.

*Diggles* removed ambiguity as to when a defendant had the opportunity to object to an adopted list of conditions. It answered the question twice. First, in the discussion of how a court could adopt a presentencing report ("PSR"), the court explained: "When the defendant confirms review of the PSR and sentencing goes forward, a court's oral adoption of PSR-recommended conditions gives the defendant an opportunity to object." *Id.* at 560. Second, the court added in its explanations of the proper procedure for adopting lists of conditions other than a PSR, "Regardless of the type of document, the court must ensure, as it does with the PSR, that the defendant had an opportunity to review it with counsel." *Id.* at 561 n.5 (5th Cir. 2020). Other published precedent of our court interprets this straightforward language similarly. *E.g.*, *United States v. Quezada-Atayde*, 148 F.4th 360, 363 (5th Cir. 2025).

*Diggles* provided a straightforward set of steps for district courts to follow when adopting written conditions: 1) confirm review with the defendant; 2) express adoption of specified conditions in a written list or elsewhere; and 3) allow time for objections. *Diggles*, 957 F.3d at 560. When these steps are not taken, if a script is not consistently followed, there will be mistakes. Creating exceptions to compliance with these clear and simple rules has at times been this court's reaction to such failures. *See United States v. Baez-Adriano*, 74 F.4th 292, 304 (5th Cir. 2023) (mentioning frustration "at the amount of post-*Diggles* cases that ignore *Diggles*'s dictates").

In this dissent, I urge my view of what is required by the rule of orderliness in the context of our *en banc* decision in *Diggles*. Reasonable minds may, of course, disagree as to what *Diggles* directs. That other panels have failed to follow our decision in *Diggles* does not alter my understanding of the opinion. A failure to follow a controlling precedent does not create a new controlling precedent. It creates confusion. My effort has been to restate the due process fundamentals, as understood by the *en banc* court.

Applying my conception of *Diggles*, the clearest record evidence of review comes when the court asks the defendant if the conditions have been reviewed with counsel. I will not quibble that it would suffice if counsel confirms that the review with the defendant occurred. There are other specific statements or events that make the review clear. What must be clear on the record is that the defendant is aware of the conditions.

Here, the record does not support attorney-defendant review of the conditions. The district court did not ask either Lezama-Ramirez or counsel about whether that had occurred. In fact, there is no evidence that Lezama-Ramirez, a Spanish speaker who required a translator in court, was able to comprehensively read the PSR, an English-language document — much less review it with counsel. It is true that counsel demonstrated in-depth

knowledge of the conditions, but it is the defendant who holds the Fifth Amendment right to be informed of his sentence, including the conditions of supervision. Indeed, it is the defendant who will have to comply with the conditions. It is hardly inconceivable that an attorney — by no means suggesting the attorney did so here — could study the PSR closely but never see the need to discuss with the defendant. Further, this defendant's being subject to similar conditions before is not sufficient to demonstrate he knew he would be subject to the same ones again.

Respectfully, I conclude the majority does not accurately apply the test set out in *Diggles*. Instead, it uses prior precedent on Federal Rule of Criminal Procedure 32(i)(1)(A) to infer Lezama-Ramirez's knowledge of the PSR from the actions of his counsel.

First, *Diggles* was not merely restating Rule 32(i)(1)(a) when it explained that defendants must confirm review of the PSR before there is an opportunity to object. In that section of the *en banc* opinion, a prior unpublished precedent of this court was cited: *United States v. Reyes*, 734 F. App'x 944 (5th Cir. 2018). *Diggles*, 957 F.3d at 560. In *Reyes*, the panel, applying principles of due process and not Rule 32, held that the most important evidence of an opportunity to object was that the "PSR was re-read to Reyes during sentencing, outside the presence of the district judge." 734 F. App'x at 948. Moreover, if the requirement of review sprang only from Rule 32, *Diggles*'s footnote 5 would make little sense. Rule 32 applies only to PSRs and follow-on addenda. *See* FED. R. CRIM. P. 32(i)(1)(A). *Diggles*'s imperative was more wide-ranging: "Regardless of the type of document, the court must ensure, as it does with the PSR, that the defendant had an opportunity to review it with counsel." 957 F.3d at 561 n.5.

The source for that notice requirement is the Due Process Clause, as "part of the defendant's right to be present at sentencing, which in turn is

based on the right to mount a defense." *Id.* at 560. Indeed, even when a defendant "participated at his sentencing, he was unable to effectuate his constitutional right to be *effectively present* because he did not receive sufficient notice that these two special conditions would be imposed in the written judgment." *United States v. Bigelow*, 462 F.3d 378, 382 (5th Cir. 2006). A panel of this court sought to distinguish what our oral pronouncement and Rule 32(i)(1)(a) cases require. *See United States v. Duruisseau*, No. 20-30649, 2021 WL 5778463, at *3 (5th Cir. Dec. 6, 2021) (making inferences typical of our Rule 32 cases but then faulting the district court for "not specifically verify[ing] that [the defendant] had reviewed the PSR with his counsel").

Even if we accept that our prior Rule 32 precedent applies, the district court erred. An appellate record that allowed "the inference that defense counsel had the opportunity to review the PSR" did not "justif[y] that same inference with regard to" the defendants themselves. *United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001). Recently, a panel applying our Rule 32 precedent in this context found a defendant had an opportunity to object when he "filed a statement of no objection to the PSR." *United States v. Villafana-Mondragon*, No. 25-20018, 2026 WL 731332, at *2 (5th Cir. Mar. 16, 2026). There, the defendant's statement of no objection was in his own right, and evidenced he had read the PSR. The record here presents no such evidence.

Following precedent is difficult at times, but not following it would be chaotic at all times. The absence of "judicial hierarchy" would lead to "judicial anarchy." *E.g.*, *Lefebure v. D'Aquilla*, 15 F.4th 650, 664 (5th Cir. 2021) (quotation omitted) (explaining our adherence to Supreme Court precedent). If each panel is permitted to reject an established precedent, no matter how flawed at least two panel judges view it to be, the law will become

a tangle of competing threads. Impatience with the obligation to apply existing law can arise, but the obligation is imperative.

The district courts of this circuit rely on this court to provide clear, consistent holdings that they can apply to the legal issues in front of them. We fail too often, but we will always fail when we are not obligated to try. This case is an example in which the disagreements of panel members led to a split initial decision. On rehearing, efforts to resolve those differences were undertaken in good faith, but the efforts did not succeed. The result was that only modest changes to the prior opinion were made. The possibility of such outcomes is inherent in collegial decision-making.

I would excise standard conditions 2–9, standard conditions 11–13, and special condition 1 from the written judgment. I respectfully dissent.